SOUTH DAKOTA EMPLOYERS PROTECTIVE ASSOCIATION, et al, Appellants, v. POAGE, County Auditor, Respondent.

(272 N. W. 806)

(Files Nos. 7963 and 7968. Opinion filed April 16, 1937)

*Lloyd B. Peterson,* of Watertown, for Appellants.

*R. F. Manson* and *Ellsworth E. Evans,* both of Watertown, for Respondent.

SMITH, J. This special proceeding was commenced by filing a petition praying for a writ of mandamus. An alternative writ was issued, to which the defendant interposed a demurrer and made a motion to quash. The demurrer and the motion were based on the common ground that the affidavit or petition did not state facts sufficient to constitute a cause of action. The court entered

an order sustaining the demurrer, and a further order quashing the writ. The plaintiff perfected a separate appeal to this court as to each order, and by stipulation of counsel the two appeals were consolidated and considered together.

After stating the capacity and interest of plaintiffs, the affidavit contained the following paragraphs which stand as admitted for the purposes of our consideration:

"That prior to and on the 16th day of March, A. D. 1934 and at all times hereinafter mentioned it was the duty of Codington County, South Dakota under section 10037 of the 1919 Revised Code to 'Relieve and support all poor and indigent persons lawfully settled therein, whenever they shall stand in need thereof, and the board of county Commissioners may raise money for the support and employment of the poor as provided in section 6749,' etc.

"That by reason of the insufficiency of the financial resources of the various counties in the State of South Dakota including Codington County, the Government of the United States set up agencies to provide work relief for such poor and indigent persons and provided the funds wherewith to pay for said relief work.

"That as a condition for the furnishing of said relief work and for furnishing of funds for paying for the same and thereby relieving the said Codington County of the obligation of relieving and supporting all poor and indigent persons employed on relief projects, the Government of the United States required said Codington County to agree to assume liability for all claims for damages or injuries arising directly or indirectly from the performance of such public works or resulting therefrom, and also required that the said Codington County assume liability to all workmen performing labor on such projects arising under the Workmen's Compensation Law, and further requiring that the said Codington County agree to make all necessary appropriation of funds for the payment of such claims or that it would protect itself by Workmen's Compensation Insurance.

"That pursuant to such request and requirement by the Government of the United States and for the purpose of securing federal aid to relieve such poor and indigent persons, the County of

Codington through its Board of County Commissioners entered into and on March 16, 1934 signed and filed with Philip L. Ketchum, director of social service who was then and there an agent of the United States Government in charge of said relief projects for the State of South Dakota, an agreement in writing wherein and whereby said county agreed to take out and furnish Workmen's Compensation Insurance covering all employees engaged upon any and all Federal Relief Projects a copy of which agreement is hereto attached, marked Exhibit 'A' and expressly made a part of this petition.

"That thereafter and pursuant to said agreement marked Exhibit 'A' the Board of County Commissioners of Codington County, South Dakota applied to the said South Dakota Employers Protective Association for a policy of insurance covering said relief workers and on the 10th day of April, 1934 the said South Dakota Employers Protective Association issued Policy No. 26664 and 'Special Coverage Indorsement' thereto attached dated May 10, 1934 and 'Acceptance of Relief Coverage' signed at or about the time that the agreement marked Exhibit 'A' was signed by the Board of County Commissioners and delivered the same to the said Codington County which said policy together with said 'Special Coverage Indorsement' and 'Acceptance of Relief Coverage' is hereto attached marked Exhibit 'B' and expressly made a part of this petition."

Exhibit A to which reference is made in the affidavit, supra, read as follows:

"For and in consideration of the benefits of work and labor to be received by the undersigned, Codington County, and to be paid for from the Federal Emergency Relief Act of 1933, on projects under the jurisdiction and control of the undersigned, the said Codington County hereby assumes liability for all claims for damages or injuries arising directly or indirectly from the performance of such public works or resulting therefrom, and also assumes liability to all workmen performing labor on such projects arising under the Workmen's Compensation Laws and further agrees to make all necessary appropriation of funds for the payment of such claims or will protect itself by Workmen's Compensation insurance.

"The undersigned further agrees to save harmless the United States of America against any and all such claims.

"Dated this 16th day of March, 1934."

In addition to the foregoing, the affidavit sets forth the terms of the workmen's compensation policy delivered to the county, the riders attached thereto for the purpose of extending its provisions for relief workers, and represents that under the terms of the policy premiums became due for two separate periods in the amounts of $1,150.20 and $253.83, respectively; that these premiums were made the source of claims filed with the auditor, which claims were allowed and approved by the board of county commissioners; that thereafter warrants were drawn for the same in favor of one of the plaintiffs, which warrants were duly signed by the chairman of the board of county commissioners and delivered to the defendant for countersignature, attestation, and delivery; that it was the duty of the auditor to countersign, attest, and deliver said warrants; that it was the right of the plaintiffs to have said warrants issued; that the defendant refused to countersign, attest, and deliver said warrants; that the time of appeal from the action of the board of county commissioners had expired; and that plaintiffs had no plain, speedy, and adequate remedy in the ordinary course of law.

The alternative writ commanded the auditor to immediately countersign, attest, and deliver the warrants or to show cause before the court on a day set as to why she had not done so.

▮ In the case of State ex rel. Caldwell v. Skinner, 59 S. D. 68, 238 N. W. 149, 151, in dealing with mandamus this court said:

"The purpose of mandamus is to compel affirmative action, and it is elementary law that before mandamus can properly issue at least three factors must coexist in the situation: First, the person or tribunal against whom the writ is sought must have power to perform the act desired; second, such person or tribunal must be under a clear duty to perform such act; and, third, the relator must have a clear legal right to the performance of the act which is sought to be compelled. The coexistence of these three factors will not always suffice, standing alone, to justify the issuance of the writ, but lacking any one of them the writ can never properly issue."

In testing the sufficiency of plaintiff's affidavit as support for the writ, we deal with the two last-mentioned factors in inverse order and examine, first, the rights of the plaintiffs, and second, the duty of the defendant.

It is obvious that the right of plaintiffs to insist upon a countersignature and delivery of the warrants in question turns upon the liability of Codington county for the premiums represented by those warrants. Examination of the petition discloses that it contains no averment that the relief workers in question were engaged in the service of Codington county under a contract, express or implied, as is required under section 9490 of the Revised Code of 1919 to render operative the power of the county to render itself liable for workmen's compensation, or to render operative the companion power contained in section 9482 to insure the risks, resulting from entry into the relationship created by the requisite contract of employment. If plaintiffs sought to allege rights accruing from the insurance of workers employed by the county, they need not have inserted allegations with reference to the transactions between the federal government and Codington county. The provisions of our statutes are ample in scope to create liability on the part of the county to plaintiffs if the facts and circumstances as they actually existed were such as would have permitted plaintiffs to allege, and they had alleged, that the workers in question were in the service of Codington county under such a contract as is described in section 9490, supra. The petition not only fails to set forth such a statement of facts, but, on the contrary, recites facts which implicitly deny such a relationship. The petition states: "* * * the government of the United States set up agencies to provide work relief for such poor and indigent persons and provided the funds wherewith to pay for said relief work."

There is no hint in such a factual picture of the absolute grant of funds to the county wherewith the county proceeded to set up public works and to hire, direct, and pay the workers engaged. Under the Federal Emergency Relief Act of 1933 (15 U. S. C. A. §§ 721-728) referred to in Exhibit A, the government had power to make such a grant to the county, but, as it appears from the act, it was not confined to such a method of procedure, but could make grants to the state itself or to any other public agency with-

in the state, or it could set up its own agencies within the state. We therefore conclude that plaintiffs' showing is insufficient to evidence that plaintiffs gained any rights against the county out of the exercise of the powers of the county expressly granted to it by our workmen's compensation statutes.

Analysis of the facts stated in the petition reveals that the proceeding was instituted upon the single theory that the county had power to obligate itself to the government to the extent set forth in Exhibit A, and that having so obligated itself it was permitted to contract with plaintiffs for insurance against the risks thus assumed. It is patent on the face of the showing that the right of plaintiffs must stand or fall upon determination of the adequacy of the powers of the county to assume the obligations of Exhibit A under the precise circumstances set forth in the petition.

It is contended by plaintiffs that this power of the county may be implied in furtherance of the express powers granted the county by section 6749 (as amended) and section 10035 to section 10065 to "relieve and support all poor and indigent persons lawfully settled therein" (section 10037). In furtherance of this contention, plaintiffs argue that "it was certainly to the benefit of Codington County to carry such insurance because in the event that a workman was injured while so employed, he would immediately become an object of charity and would not even earn the relief wages offered by the Federal Government."

▮ A county is vested with only such powers as are expressly conferred by statute, or which may be reasonably implied from the powers expressly granted. Pearson v. Johnson, 59 S. D. 163, 238 N. W. 644; State v. Davis, 11 S. D. 111, 75 N. W. 897, 74 Am. St. Rep. 780; Meek v. Meade County, 12 S. D. 162, 80 N. W. 182. It is not contended that authority to obligate the county under Exhibit A appears under any express grant of power unaided by the doctrine of implication of powers. Examination of our statutes has failed to bring to light any express grant of power to the county from which the requisite power for which plaintiffs contend may be more readily implied, if it may be implied, than from the express powers plaintiffs point out in their petition. We therefore confine ourselves to a consideration of the extent to

which power may be legitimately implied in aid of the grant of power to relieve and support the poor.

Implied power is sired by necessity and comes from an express power. It may not exist until an express power has been created from which it may spring. It functions as an essential aid in the fulfillment of the purpose to which its parent power is directed. The strength it gains from necessity must be sufficient to withstand all attacks of doubt. Needless to say, it cannot operate in fields proscribed by organic law. McQuillen Municipal Corporations (2d Ed.) vol. 1, p. 915.

The following apt statements by the Wisconsin court illuminate our progress towards decision:

"Implication of authority in bodies corporate, more especially those created for municipal purposes, should be clear and undoubted, and the party claiming through them should be able to point them out with certainty and precision. The fact that he cannot, is conclusive that they do not exist. Mere general arguments drawn from the convenience of possessing a power under certain circumstances in case of emergency—conclusions that, if possessed, it might be beneficially exercised, are very dangerous sources of corporate authority. * * * Implications spring from the necessities of some power actually conferred, and not from notions of what would be convenient or expedient under particular circumstances." Butler v. City of Milwaukee, 15 Wis. 493.

Does the petition reveal that the exercise of the power in question was necessary, indispensable, or essential to the exercise of the power to support and relieve the poor? The support and relief contemplated by the Legislature, as evidenced by the statutes, is direct in character and is primarily for the benefit of those unfortunate persons having a lawful settlement in the county who, through incapacity or circumstances over which they have no control, have lost the ability to help themselves. It includes, among other things, maintenance or allowance for necessities, hospitalization, medical care and treatment, education, visitation, and supervision. Much latitude is permitted, but the power is not unlimited. In ascribing intent to the Legislature, the fact that it placed limitations upon the power of the county to raise revenue cannot be

overlooked. Nothing in the statute points to an intention that the county engage in activities directed to the promotion of other welfare programs, or that it solicit or bargain for outside assistance to the poor. Its power to spend is intimately related to its power to raise revenue. That compliance with the government requirement resulting in the execution of Exhibit A would contribute indirectly to the objects of our poor laws cannot be questioned. Benefits would thereby accrue to the poor of the county. However, as the price of those benefits, the arrangement required the county to purport to assume the obligations of an insurer of workmen's compensation and other unmeasurable liability. The petition does not show that the class to be benefited by the government program was limited to those who could claim county relief as a matter of right. The work relief philosophy seeks to prevent, as well as to relieve, poverty. The county would secure benefits and advantages for itself and the poor if it complied. If it refrained from attempting to comply, it would remain free to expend the entire amount the statutes permit it to raise for the poor. Thus it appears that exercise of the claimed power would prove beneficial and advantageous if it existed. It does not appear that the claimed power was necessary, essential, or indispensable to the exercise of the power granted to relieve the poor.

The advisability of vesting the county with power to associate with the government in its work relief program must be determined by the Legislature. No matter how urgent the circumstances, the courts may not create such power by illegitimate inference.

The conclusion is inescapable that the power of the county to execute Exhibit A may not be implied as an aid to its express power to support and relieve the poor.

■ Have plaintiffs established a clear duty on the part of the defendant? Predicated upon the fact that it is the duty of the board of county commissioners to audit and allow claims under the provisions of section 5897 and section 5898, Revised Code of 1919, and that the statute contains no express provision charging the auditor with duty in connection with the allowance of claims, plaintiffs contend that the defendant had no discretion but was duty bound, after the allowance of the claim by the county commissioners, to countersign, attest, and deliver the warrants. This conten-

tion is untenable. The very name auditor connotes certain duties. To relieve that officer of any of those duties, through unnecessary construction, would deprive the county of services of immeasureable value. What this court said in dealing with the duty of the county treasurer to pay warrants in the case of Evans v. Bradley, 4 S. D. 83, 55 N. W. 721, 722, is equally applicable to the duty of the auditor to countersign and attest warrants. We there said: "It is the duty of the county treasurer, under ordinary circumstances, to pay the warrants drawn according to law by the board of county commissioners when he has funds in his hands for that purpose. If, however, he has reasonable grounds to question the legality of the warrant, or the power of the county commissioners to draw the same, he is justified in refusing to pay such warrant until the validity of the same is established by the judgment of a court of competent jurisdiction."

If the defendant auditor had reasonable grounds for believing that the county commissioners in the instant case were exceeding their powers, it was her duty to refuse to countersign and attest the warrants described in plaintiffs' petition.

Because plaintiffs have failed to establish their right to payment of the premiums by the county and the duty of the auditor to countersign and deliver the warrants, it follows that the orders of the learned trial court must be, and they are, affirmed.

All the Judges concur.