Louie DeLAIR, Plaintiff and Appellant,

v.

COUNTY OF LaMOURE, Township of Sheridan, Walter Piehl and Hattie Piehl, Defendants and Appellees.

Civ. No. 10205.

Supreme Court of North Dakota.

Oct. 27, 1982.

Gilje, Greenwood & Dalsted, Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for plaintiff and appellant; argued by Charles J. Gilje, Jamestown.

Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendant and appellee County of LaMoure; argued by Jay Fiedler, Grand Forks.

Zuger & Bucklin, Bismarck, for defendant and appellee Township of Sheridan; argued by James Hill, Bismarck.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees Walter Piehl and Hattie Piehl; argued by Steven Storslee, Bismarck.

SAND, Justice.

Louie DeLair [DeLair] appealed from summary judgments[1] dismissing his negligence action against LaMoure County [LaMoure], Sheridan Township [Sheridan] and Walter Piehl and Hattie Piehl [Piehls] for injuries sustained in the early morning of 12 July 1980 when the motorcycle he was operating ran into a fence located on land owned by the Piehls in Sheridan Township, LaMoure County, North Dakota.

The principal facts are not in dispute, and the following diagram showing the section lines, roads, fence, stop sign, and location of the impact, and other pertinent information, will be helpful in resolving the issue presented.

1. Separate judgments dismissing each of the defendants were entered and DeLair appealed from each judgment.

```
Section 10-136-61        *  |  COUNTY        Section 11-136-61
(City of Marion          *  |  HIGHWAY #61
includes this section)   *  |  (Paved)
                         *
                         *
                         *
                         *  |                 |Stop sign
                         *  |
                       __*__|              _____
                        /*   ⊥              ←  DeLair's
fence                  / *   ⊤                  Direction
* * * * * * * */* * *   ⊥
fence gate and/       APPROACH   +           Sheridan Township
approximate point                            Road (gravel)
of impact            _____              _____
Section 15-136-61       |                  Section 14-136-61
                                                   N
+ Section Corners                                  ↑
                                              W ←—→ E
Not to Scale                                       ↓
                        |                          S
```

DeLair drove his motorcycle on the improved Sheridan Township gravel road coming from the east, going west, and apparently went across county highway 61 onto the approach and into the fence gate. The fence and gate are on the Piehls' property. The city of Marion's boundaries coincide with the boundaries of Section 10. According to affidavits and depositions submitted by the parties, the section line between Section 10 and Section 15 never has been an improved road.

The record is not clear as to whether or not DeLair stopped at the stop sign at the intersection. DeLair was in a coma for approximately a month after the accident, and his deposition reflects that he could not remember the events of the day of the accident. The passenger on DeLair's motorcycle, Todd Schultz, did not remember if DeLair stopped at the stop sign.

According to depositions, DeLair had been at a party prior to the accident and had consumed between six and ten beers. DeLair testified in his deposition that he traveled on gravel roads and not highways when he had been drinking, and he would usually go through stop signs when no one was coming on the intersecting road.

At least one other motorcycle traveled the same route on the night of the accident. The depositions of Lee Luck and Craig Headland reflect that they left the party with DeLair and followed DeLair's motorcycle at a speed of approximately 55 miles per hour. They further testified that the motorcycle they were on went through the stop sign without stopping, and onto the approach, and through a hole in the gate made by DeLair's motorcycle. Neither Luck nor Headland saw the accident involving DeLair, and they did not know if DeLair stopped at the stop sign. DeLair ultimately pleaded guilty to a charge of careless driving in connection with the accident.

DeLair initiated the instant action against the named defendants. Motions for summary judgment were made and the court, in response to the motions, granted summary judgment in favor of LaMoure, Sheridan, and the Piehls, dismissing the complaint. The trial court, in its memorandum opinion, concluded that the undisputed facts established that the point of impact occurred on a designated public roadway which was neither maintained nor supervised as a part of a county or township road

system and held that Sheridan and La-Moure had "no duty to maintain a road and cannot be forced to maintain a road on a section line which they have not chosen to have as a part of their designated road system." The trial court also concluded that no duty was owed to DeLair by the Piehls. Separate summary judgments dismissing each defendant were entered, and DeLair appealed to this Court.

DeLair contended that the trial court erred in determining no duty was owed to him by LaMoure, Sheridan, and the Piehls. DeLair raised several subissues which he contended supported his position that there was a duty.

■ The question of duty must be considered within the framework of our law on summary judgment. The summary judgment procedure of Rule 56, North Dakota Rules of Civil Procedure, is a procedural device available for promptly and expeditiously disposing of a controversy without a trial whenever there is no dispute as to material facts or if only a question of law is involved. *Zuraff v. Empire Fire & Marine Insurance Co.,* 252 N.W.2d 302 (N.D.1977). If there is a dispute of facts, summary judgment may be appropriate if the law is such that a resolution of the factual dispute will not change the result. *Sande v. City of Grand Forks,* 269 N.W.2d 93 (N.D.1978).

■ Generally, negligence actions are not appropriate for summary judgment. *Kirton v. Williams Electric Co-op., Inc.,* 265 N.W.2d 702 (N.D.1978). However, a negligence action presupposes the existence of a duty, *Larson v. Meyer,* 135 N.W.2d 145 (N.D.1965), and whether or not a duty exists in a negligence action is a matter of law to be resolved by the court before allowing a jury to hear evidence concerning a breach of that duty and proximate cause. *Lumpkin v. Streifel,* 308 N.W.2d 878 (N.D.1981). *See,* W. Prosser, Law of Torts, (4th ed. 1971), p. 206. Consequently, if LaMoure, Sheridan, and the Piehls did not have a duty to DeLair, then summary judgment dismissing DeLair's complaint was proper.

The trial court's memorandum decision relied upon the following language from *Belt v. City of Grand Forks,* 68 N.W.2d 114, 120 (N.D.1955), to support its conclusion:

"It is well settled that a city has the right to improve and open for public travel only a portion of a platted street, and a city is not liable for injuries to persons using a portion of the street which a city has not undertaken to improve."

The trial court then stated that "One could simply substitute the word county or township for city and have the same substance of the law."

DeLair contended that the trial court's reliance on *Belt v. City of Grand Forks, supra,* was misplaced because section lines outside of city limits are considered public roads regardless of the section line being opened by a governing board and regardless of the section line being traveled, citing North Dakota Century Code § 24–07–03. However, an examination of the statute indicates his contention is misplaced.

Section 24–07–03, NDCC, provides as follows:

"In all townships in this state, *outside the limits of incorporated cities,* and outside platted townsites, additions, or subdivisions recorded pursuant to chapter 40–50, *the congressional section lines shall be considered public roads,* to be opened to the width of two rods [10.06 meters] on each side of such section lines, where the same have not been opened already upon the order of the board having jurisdiction, without any survey being had, except where it may be necessary on account of variations caused by natural obstacles, subject, however, to all the provisions of this chapter in relation to assessments of damages.

"The county commissioners, if petitioned by a person having an interest in the adjoining land or a portion thereof, are authorized, after public hearing and a finding by the commissioners of public benefit, to close section line roads or portions thereof which are not used for ten years, are not traveled due to natural obstacles or difficulty of terrain, are not

required due to readily accessible alternate routes of travel, or are intersected by interstate highways causing such section line road to be a dead end, providing the closing of such dead end section line road does not deprive adjacent landowner access to his property. After such section line roads are closed, they may be leveled and farmed by the adjacent landowners or tenants. However, if drainage is interfered with due to the farming operations, alternate means of drainage must be provided for by the landowners or tenants farming such lands." [Emphasis added.]

A brief history of this section will be helpful to understand the issue raised by DeLair.

The Act of July 26, 1866, Ch. 262, § 8, 14 Stat. 253, R.S. § 2477, now 43 U.S.C. § 932, provided that "The right of way for the construction of highways over public lands, not reserved for public uses, is granted." This was interpreted as an offer of public land which could be accepted by the states in various ways. The Dakota Territory acceptance was effectuated by Laws, Dakota Territory 1871, Ch. 33, which provided that: "hereafter all section lines in this Territory shall be and are hereby declared public highways as far as practicable." This Act remained essentially the same until 1897, when the statute was amended by Ch. 112, § 3, which provided as follows:

"In all townships in this state in which no public roads have been laid out or which have not been organized, the congressional section lines shall be considered public roads, to be opened to the width of two rods on each side of such section lines, upon the order of the board

of supervisors, without any survey being had, except where it may be necessary on account of variations caused by natural obstacles, subject, however, to all the provisions of this chapter in relation to assessment of damages."

The statute was amended in 1899 by Ch. 97, which provided, in part, as follows:

"In all townships in this state *outside the limits of incorporated cities, villages or towns,* the congressional section lines shall be considered public roads, to be opened to the width of two rods on each side of such section lines, where the same have not already been opened upon the order of the board having jurisdiction as provided by section 4 of this chapter without any survey being had, except where it may be necessary on account of variations caused by natural obstacles, subject, however, to all the provisions of this chapter in relation to assessment of damages." [Emphasis added.]

In 1965, the Legislature, through S.L. Ch. 201, § 1, permitted the closing of section lines which were intersected by interstate highways providing the closing of the section line road "does not deprive [a] landowner access to his property." In 1974 this Court, in *Small v. Burleigh County,* 225 N.W.2d 295 (N.D.1974), held that congressional section lines outside the limits of incorporated cities, unless closed by proceedings permitted by statute (section lines intersecting interstate highways), are open for public travel without the necessity of any prior action by a board of township supervisors or county commissioners.[2]

DeLair's argument concerning section lines being considered public roads apparently admits, for purposes of this issue, that

---

2. The *Small* decision prompted legislative action in 1977 which, in effect, provided a procedure through which section lines outside the limits of incorporated cities could be closed. Session Laws 1977, ch. 234, § 3, ch. 235, § 1. The legislative materials available relating to the amendments reflect that the Legislature was primarily concerned with providing a means through which a section line could be declared closed. Those materials reflect that landowners were concerned because, in some instances, they would be required to build

"double lane fences" along section lines in order to keep section lines "open" in compliance with the decision in *Small v. Burleigh County, supra.* The landowners were concerned that requiring each section line to be open would deprive them of the "right of using different sections of the range because cattle could not get to the areas if the section lines were cut off." Accordingly, the Legislature provided a means in NDCC § 24–07–03 to "close" section line roads. The record does not reflect that such a procedure was followed in this case.

the accident occurred on or within two rods of the section line between Sections 10 and 15, and for purposes of the resolution of this issue, we will accept that fact as true.[3] The undisputed facts also establish that the fence and the gate which DeLair hit are on the Piehls' property. The Piehls' property in question is entirely within the boundaries of Section 10, and the city of Marion's boundaries coincide with the boundaries of Section 10. Consequently, we do not believe it can be disputed that the accident occurred within the boundaries of the city of Marion.

Because the section line between Sections 10 and 15 is not outside the limits of an incorporated city, we do not believe that congressional section line is a public road pursuant to NDCC § 24–07–03.

▆▆▆▆ Notwithstanding the language of NDCC § 24–07–03, DeLair contended that the congressional section line where the accident occurred was a public road long before the city of Marion was incorporated and there was no retroactive cancelling of the section line as a public road. DeLair cited the following quotation from *Huffman v. Board of Supervisors of West Bay, Benson County,* 47 N.D. 217, 222, 182 N.W. 459, 462 (1921), to support his position: "It is a maxim of the common law,—'once a highway, always a highway.'" DeLair also contended there must be some type of action by a board of appropriate jurisdiction to terminate the public road, citing NDCC § 24–07–34.

We recognize that the phrase "outside the limits of incorporated cities" was added to our statutory provision in 1899. All section lines were declared public highways in 1871

prior to the addition of that phrase. According to the position urged by DeLair, the addition of the phrase "outside the limits of incorporated cities" would be surplusage because all of the section lines, even if within the limits of an incorporated city, would already be public roads and would fall within the "once a highway—always a highway" concept.

If DeLair's contention is correct that every section line is a public road and will continue to be a public road no matter what, we can envision all kinds of problems and ultimate chaos, particularly in cities.

We cannot endorse DeLair's construction because it would overlook the principle that meaning must be given, if possible, to every word, clause, and sentence in a statutory enactment. *In the Interest of P.W.N.,* 301 N.W.2d 636 (N.D.1981).

▆▆▆▆ Furthermore, we do not believe the authorities cited by DeLair stand for the proposition that a public road open for public travel on a section line, as contemplated by NDCC § 24–07–03, must necessarily be an improved road, imposing upon the city, township, or county the responsibility of maintaining the section line as an improved road. A vast difference exists between the dedication of an easement or right of way permitting the public to travel on a section line and the requirement of maintaining the section line as an improved road or highway. The costs of maintaining an improved road on each section line also dictate that there is no duty on a county, township or city to provide an improved road on each section line.[4] These costs apparently have been recognized in part by the Legislature in NDCC §§ 24–05–16 and

---

**3.** DeLair contended that there appears to be a factual dispute as to whether or not the accident occurred within "the limits of [an] incorporated city" so that the section line would not be considered a public road. The record establishes that the impact occurred within the city limits. However, in view of our decision that there is no duty to maintain an improved road on the section line and the law cited in *Belt v. City of Grand Forks, supra,* the resolution of that factual dispute would not change the result on this issue. *Sande v. City of Grand Forks, supra.*

**4.** NDCC § 24–01–01 provides, in part, as follows:

"In designating the highway systems of this state, as hereinafter provided, the legislative assembly places a high degree of trust in the hands of those officials whose duty it shall be, *within the limits of available funds,* to plan, develop, operate, maintain, and protect the highway facilities of this state, for present as well as for future use." [Emphasis added.]

24–05–17, which, in effect, provide that the board of county commissioners has the authority to operate and maintain a county road system as designated and selected by the board.

Based on these observations, we conclude a public road, as contemplated by NDCC § 24–07–03, does not impose a duty on a county or township to maintain an improved road on the section line. A county or a township does not have a duty to maintain an improved road on each section line, nor do we believe a county or a township can be held legally liable for injuries to persons using a portion of a designated public road which the county or township has not undertaken to improve. *Cf., Belt v. City of Grand Forks, supra* (city not liable to persons using a portion of the street which a city has not undertaken to improve).

DeLair also contended that the Piehls owed him a duty not to obstruct a highway in a manner to prevent free use by the public (NDCC § 24–12–02) and not to build a fence on a section line (NDCC § 24–06–28).

▆▆ NDCC § 24–12–02 [5] is not applicable to the undisputed facts of this case because

these facts indicate that the fence and gate, where the impact took place, were not in an area outside the limits of an incorporated city, and therefore in accordance with § 24–07–03, the area in question is not "considered public roads" nor is it required to be open to certain widths on each side of the section line, particularly the north side in this instance. Furthermore, the section line is not a "well-traveled trail" or public highway as contemplated by that section. DeLair did not present any factual basis, in the form of affidavits or otherwise, to establish that the section line was, or ever had been, traveled or used as a road.

▆▆ We also are not persuaded NDCC § 24–06–28 [6] is applicable because that statute provides, in part, that construction of fences shall not be prohibited across section lines which have not been opened because construction of a road is impracticable due to the topography along the section line. In this instance, the depositions and affidavits reflect there has been no construction of a road along this section line, nor has the section line ever been used for travel. Based on these factors, we conclude that NDCC § 24–06–28 did not impose a legal duty on the Piehls under the factual situation presented by this case.

**5.** NDCC § 24–12–02 provides as follows:
"No person shall:
1. Obstruct any public highway in any manner with intent to prevent the free use thereof by the public;
2. Willfully and knowingly obstruct or plow up, or cause to be obstructed or plowed up, any public highway or right of way, except by order of the officials having jurisdiction over such highway for the purpose of working or improving the same; or
3. Build or place a barbed wire fence across any well-traveled trail which has been the usual and common route of travel for not less than one year without placing on the outside of the top tier of barbed wire on said fence a board, pole or other suitable protection, to be at least sixteen feet [4.88 meters] in length."

**6.** NDCC § 24–06–28 provides as follows:
"1. No person shall place or cause to be placed any permanent obstruction, stones, or rubbish within thirty-three feet [10.06 meters] of any section line, unless written permission is first secured from the board of county commissioners or the board of township supervisors, as the case may be. Such permission shall be granted where the section line has been closed

pursuant to section 24–07–03 or where the topography of the land along such section line is such that in the opinion of the board of county commissioners or board of township supervisors, as the case may be, the construction of a road on the section line is impracticable.
"2. Subsection 1 shall not be construed to prohibit construction of fences:
a. Along or across section lines which have been closed pursuant to section 24–07–03 or which have not been opened because construction of a road is impracticable due to the topography of the land along the section line, but such fences shall be subject to removal as provided in section 24–06–30.
b. Across section lines which have not been closed pursuant to section 24–07–03 if cattle guards are provided in accordance with chapter 24–10 where fences cross the section lines.
"3. The construction of fences pursuant to subsection 2 shall not be considered an obstruction of section lines and any person who damages any fence or who opens and fails to close any gate constructed under subsection 2 is guilty of an infraction."

DeLair also contended that the trial court's reliance upon *Belt v. City of Grand Forks, supra,* was erroneous because the earlier-quoted language was taken out of context and missed the thrust of the case which was contained in the following quote:

"A municipal corporation is only required to guard against such dangers in its streets as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care." *Belt v. City of Grand Forks, supra* at 120.

DeLair further contended that a municipal corporation and a private party can be liable even when obstructions are off the highway or road and on private land. DeLair asserted that LaMoure, Sheridan, and the Piehls all had a basic duty for the protection of others against unreasonable risks.

DeLair cited 39 Am.Jur.2d, *Highways, Streets, and Bridges,* § 402, which provides as follows:

"It is well settled that it is the duty of the public authority to erect railings or barriers along the highway at places where they are necessary to make the way safe and convenient for travelers in the use of ordinary care, and that such public authority is liable for injuries to travelers resulting from a breach of its duty in this regard. This is true even though the danger arises from structures or excavations outside the highway and on the land of adjoining owners, when such structures or excavations are in the general direction or course of travel upon the highway."

DeLair also cited 39 Am.Jur.2d, *Highways, Streets, and Bridges,* § 530, which provides as follows:

"The mere fact that property abutting a highway or street is unsafe for travel is not enough to impose liability upon an abutting owner for injuries sustained by travelers who enter thereon. An abutting owner under ordinary circumstances is not bound to keep that part of his premises not immediately adjacent to a highway in a safe condition in anticipation that a traveler may accidentally wander thereon, or intentionally pass thereon from the highway, and sustain injury. However, the general rule, with some authority to the contrary, is that an owner of property adjoining or abutting on a public highway who makes an excavation on his property near the highway or creates or permits some condition to exist there which renders travel on the highway unsafe, without taking reasonable precautions to guard against the danger thus created and to warn or protect travelers therefrom, may be held liable to a traveler, himself in the exercise of due care, who is injured in consequence of the dangerous condition existing, when he deviates from the highway unintentionally or from some necessity."

In *Belt v. City of Grand Forks, supra,* at 121, we said:

"We do not think that a city is chargeable with liability for failure to maintain barriers, lights or warning signs or notices at the point of an offset or jog in a street, where the same could not constitute a *dangerous situation to a prudent driver.*" [Emphasis added.]

These authorities, as well as cases cited in 39 Am.Jur.2d, *Highway, Streets, and Bridges,* §§ 402, 403, 404, and 530, stand for the proposition that there is a duty to erect barriers or railings along highways and roads to make the way safe from hazardous or dangerous conditions for travelers using ordinary care. A necessary corollary is that there is no duty to put a guardrail or barrier on a road where a dangerous or unusually hazardous condition does not exist for travelers exercising ordinary care. These principles necessarily require that the streets are used lawfully. The duties of the various political subdivisions in connection with building and maintaining roads do not include a lagniappe in the form of additional precautionary measures to protect persons from their own careless acts. Interrelated with these concepts are the principles that counties and townships cannot be insurers against accidents because their resources are limited and must be used as efficiently as possible.

In this instance we must keep in mind that there was a stop sign at the intersection of the county and township roads. There was no pit, structure, excavation or trap which was unusually hazardous in view of the fact that the intersection was controlled by a stop sign. Each individual driver must take some responsibility for obeying traffic signs, such as stop signs. We are not expressing an opinion as to the factual question of whether or not DeLair stopped at the stop sign; however, we believe that the intersection, controlled as it was by a stop sign, was not a dangerous or unusually hazardous condition to a driver exercising ordinary care and driving within the limits of the law. We also note that DeLair ultimately pleaded guilty to a charge of careless driving in relation to the accident, which is an admission that he was not using the road in a lawful manner.

Accordingly, based on the undisputed facts[7] of this case and the earlier-cited principles of law, we conclude there was no duty on LaMoure, Sheridan, or the Piehls because the intersection, controlled as it was by a stop sign, did not represent an unreasonable risk or dangerous condition to prudent individuals lawfully using the road.

The judgments of the district court are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

GARAAS, D.J., sitting in place of PAULSON, J., disqualified.

PEDERSON, Justice, concurring in part and dissenting in part.

Summary judgment disposition of DeLair's claims against LaMoure County and Sheridan Township is appropriate under Article I, § 9, of the North Dakota Constitution, and for the reasons stated by Justice Sand. The Piehls, however, are individuals whose alleged negligence, it is claimed, caused DeLair's injury. Even though DeLair's claim against the Piehls may seem preposterous, it should not have been disposed of summarily. See *Gowin v. Hazen Memorial Hospital Ass'n*, 311 N.W.2d 554 (N.D.1981).

GARAAS, District Judge, dissenting.

Summary judgment disposition of the claims of DeLair is not appropriate. I agree with that portion of the majority opinion wherein the Court holds that the area where the accident occurred is not a public road in that it is within an incorporated city.

Irrespective of the fact the road was a non-public road, there remains an obligation on the part of LaMoure County and Sheridan Township to comply with both 39–13–07 NDCC and the general law that highways must be built to eliminate dangerous situations. If such dangerous situations do exist, the county and township are mandated by statute to install uniform traffic control devices necessary to regulate, warn and guide traffic. Pursuant to 39–13–06 NDCC, the Highway Commissioner has approved a manual and specifications for traffic control devices for all highways, as promulgated by the United States Department of Transportation pursuant to Title 23 U.S.C. Sections 109(b), 109(d) and 402(a). See *Belt v. City of Grand Forks, supra.*

Whether the intersection involved in the accident in this case is a dangerous situation is a question of fact. Whether the county and township have complied with the specifications is also a question of fact.

The majority opinion has found facts to exist. These facts were never found to exist by the trial court and were not conceded to exist by the parties. On this ap-

---

7. The record in this case consists of affidavits and depositions in addition to the complaint and answer. In *Conrad v. Suhr*, 274 N.W.2d 571 (N.D.1979), in a special concurrence, I said: "... In my view it does not require any legal ingenuity to draft a complaint charging someone with negligence. . . ." Nothing since then has changed my mind. But be that as it may, if the record were to consist only of the complaint alleging negligence without the affidavits and depositions, then the subject matter would not be appropriate for summary judgment. However, here we have affidavits and depositions and as a result, without making any findings of fact, no material facts are left in dispute.

peal from the summary judgment, the majority has made the unwarranted and disputed finding of fact as follows:

"___ we conclude there was no duty on LaMoure, Sheridan, or the Piehls because the intersection, controlled as it was by a stop sign, did not represent an unreasonable risk or dangerous condition to prudent individuals lawfully using the road."

Another finding of fact made by the majority is as follows:

"___ however, we believe that the intersection, controlled as it was by a stop sign, was not a dangerous or unusually hazardous condition to a driver exercising ordinary care and driving within the limits of the law."

The Supreme Court, in a continuation of an unauthorized trend, is once again acting as a trier of fact. The fact finding function is not vested with the Supreme Court in that trial *de novo* has been abolished in civil cases. Thus, this trend should no longer be engaged in.

The majority opinion has found facts in dispute to support its position as follows: 1) that the stop sign was an adequate warning; 2) that the stop sign was properly located; 3) that the intersection was not a dangerous situation; 4) that the fence as a dangerous barrier to the traveling public could not be forseen as dangerous in the exercise of ordinary care; 5) that DeLair did not exercise ordinary care; 6) that De-Lair used the highway unlawfully; and 7) that no engineering defects exist in the construction and planning of the intersection.

Defendants Walter Piehl and Hattie Piehl, as adjacent landowners, also owe a duty to the DeLair and the traveling public to not allow a condition to exist which renders travel unsafe, a point conceded by the majority opinion. Whether the Piehls were negligent or not in this respect is an issue of fact. The Supreme Court cannot make a determination and find as a fact that the Piehls were not negligent. I agree with the dissent of Justice Pederson who holds that the action against the Piehls cannot be disposed of summarily.

The law clearly delineates the powers of the trial court and the powers of the Supreme Court. The Supreme Court, in usurping the trial court's power as a fact finder, creates untold problems with the litigants and encourages numerous unnecessary appeals. If the Supreme Court is to grant trial *de novo,* the law should be changed to permit it to do so. Until that happens, the Supreme Court must limit itself to the functions vested with an appellate court on review and trust the trial courts to function as triers of fact.