Gloria **FORTIER** and Lawrence Fortier, Plaintiffs and Appellants,

v.

Mack V. **TRAYNOR** and Fargo Clinic, Defendants and Appellees.

Civ. No. 10285.

Supreme Court of North Dakota.

Feb. 24, 1983.

Wegner, Fraase, Nordeng & Johnson, Fargo, for plaintiffs and appellants; argued by Mervin D. Nordeng, Fargo.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendants and appellees; argued by John D. Kelly, Fargo.

SAND, Justice.

Plaintiffs, Gloria Fortier and Lawrence Fortier, appealed from a district court order for dismissal and judgment dismissing with prejudice their complaint against the defendants, Mack V. Traynor and the Fargo Clinic.

The Fortiers, on 5 February 1982, commenced a medical malpractice action against Traynor and the Fargo Clinic. The complaint alleged, in substance, that in September 1979 Gloria Fortier contacted the Fargo Clinic for treatment of a cold and was referred to Dr. Traynor, a partner, agent or employee of the Fargo Clinic who negligently caused improper medical treatment to be administered, resulting in damage to her and her husband, and that the doctor failed to obtain her informed consent.

The defendants jointly answered the complaint on 4 March 1982 generally denying the alleged negligence, and later served interrogatories dated 9 March 1982 upon the Fortiers requesting, among other things, information regarding the names and addresses of each person the Fortiers proposed to call as expert witnesses at trial and the subject matter upon which the expert witnesses were expected to testify.

The Fortiers responded to the interrogatories on 30 April 1982, and, in response to a question asking for the names of their expert witnesses, stated, "Defendant and agents of the Defendant." The remaining interrogatories pertaining to expert witnesses, if any, as well as interrogatories concerning the medical theories or authorities the Fortiers were going to rely upon, were answered either with "None" or "Unknown." At no time did the Fortiers supplement these responses pursuant to North Dakota Rule of Civil Procedure 26(e).

The Fortiers' answers to the interrogatories also included statements to the effect that Dr. Traynor and Dr. Stoy made "statements or admissions concerning the cause of or the fault of the damage" set out in their complaint.

On 28 May 1982 the defendants moved to dismiss the Fortiers' complaint because the Fortiers had not obtained "an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court" as required by North Dakota Century Code § 28–01–46.

The Fortiers opposed the motion and asserted that NDCC § 28–01–46 had not been enacted at the time their cause of action arose and, therefore, could not be applied retroactively; that the exceptions in § 28–01–46 referring to informed consent applied to their cause of action; and that the statute was unconstitutional.

At the time the motion to dismiss was heard by the court (25 June 1982), the For-

tiers did not produce an expert opinion to substantiate their allegations of professional negligence. The court conditionally granted the motion to dismiss unless the Fortiers, within thirty days, substantiated their claim with an expert opinion. The Fortiers did not obtain an expert opinion within thirty days nor did they ask for an extension. As a result, an order for dismissal with prejudice based upon the briefs, motion papers of both parties, and arguments of counsel, was entered on 27 July 1982 and a judgment of dismissal was entered on 4 August 1982. The Fortiers appealed.

The first issue raised by the Fortiers is that the district court erred in dismissing their complaint because NDCC § 28–01–46 had not been enacted at the time their cause of action arose and, pursuant to this Court's decision in *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979), could not be applied retroactively.

In *Reiling, supra,* the district court dismissed the Reilings' medical malpractice claim because the Reilings had not submitted their claim to a medical review panel prior to commencing their action in district court as required by the existing statute, NDCC § 32–29.1–01.[1] The alleged negligence occurred in 1976 and the relevant statutes (Ch. 32–29.1, NDCC), became effective 1 July 1977. The Reilings commenced an action on 22 February 1978 without complying with the provisions of Ch. 32–29.1.

On appeal to this Court, the dispositive issue was whether or not the Reilings were required to submit their claim to a medical review panel and otherwise comply with Ch. 32–29.1, NDCC, even though their cause of

action arose before the effective date of that chapter.

In resolving that issue we considered and interpreted NDCC § 1–02–10 [2] and concluded that:

"... § 1–02–10, N.D.C.C., applies to all statutes enacted by the legislature regardless of whether they are substantive or procedural. All statutes enacted by the legislature are to be applied prospectively, *i.e.,* they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively." *Reiling v. Bhattacharyya,* 276 N.W.2d at 240–241.

In *Reiling, supra,* we also noted that our interpretation of NDCC § 1–02–10 would put the Legislature on notice that it must specifically state that a statute is to apply retroactively if the Legislature intends that the statute apply retroactively.

We recognize, however, that the gravamen of our decision in *Reiling, supra,* pertained only to the cause of action and did not directly involve a purely procedural matter. In making this observation, we are aware that in some instances it is difficult to draw the line as to when a matter is procedural rather than substantive. This may be likened to the observation that it is easy to tell the difference between night and day, but nearly impossible to precisely state when the day ends and the night begins. Be that as it may, the legislative enactment under consideration is in the nature of a statute of limitations, which historically has been the function of the Legislature. We have reservations that *Reiling, supra,* intended to express the view that

---

1. NDCC § 32–29.1–01 provided as follows:

 "A medical review panel consisting of two attorneys and two physicians licensed to practice in this state and one citizen member who shall represent health care consumers shall review all claims based upon alleged professional negligence against a health care provider. No action against a health care provider based upon alleged professional negligence shall be commenced in any court in this state until the claimant shall file a certificate of review with the court. For purposes of this chapter, a 'health care provider'

includes any person, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, or hospital, or an officer, employee, or agent thereof acting in the course and scope of his employment.

NDCC Ch. 32–29.1 was repealed by S.L.1981, ch. 358, § 1.

2. NDCC § 1–02–10 provides as follows:

 "No part of this code is retroactive unless it is expressly declared to be so."

purely procedural matters governed by rules may not be applied retroactively.[3]

The statute involved in the instant case, NDCC § 28–01–46, provides as follows:

"Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence shall be dismissable on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court. This section shall not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence."

 This statute basically sets a period of time within which certain information supporting the allegation of medical malpractice (admissible expert opinion) must be presented or made known. The period of time is three months from the commencement of the action or at a later date set by the court. It has attributes of and, in a sense, is a statute of limitations requiring that an action based upon professional negligence shall be dismissed unless admissible expert opinion is obtained within three months, or such other time as set by the court, to support the allegation of professional negligence. Ordinarily, statutes of limitation will not be given a retroactive effect unless the Legislature intended that result. *See, generally,* 51 Am.Jur.2d, *Limitations of Actions,* § 57; 53 C.J.S., *Limitations of Actions,* § 4. This view is consistent with *Reiling, supra.*

Section 28–01–46, NDCC, went into effect on 1 July 1981 as 1981 Session Laws,

ch. 332, § 1, and the legislative materials and history pertaining to it reflect that it was intended to get rid of "frivolous" and "nuisance" malpractice actions. The legislative materials further reflect that the statute was enacted to prevent the actual trial of an action based upon professional negligence unless the plaintiff obtained an expert opinion to substantiate the allegations of negligence. This is compatible with the concept of justice that each party will proceed in a manner so as to bring about a timely disposition of the case. The legislative materials and the unambiguous language of the statute set forth several exceptions to the need for an expert opinion. One of the exceptions is for actions based on informed consent. However, nothing in the language of this statute or the legislative history suggests that the Legislature intended that § 28–01–46 be applied retroactively. Consequently, we concluded that the district court erred when it applied § 28–01–46 to the Fortiers' cause of action.

On the necessity of expert testimony, independent of § 28–01–46, we believe some observations are appropriate to guide the district court and the parties on remand.[4]

In *Winkjer v. Herr,* 277 N.W.2d 579 (N.D. 1979), a case affirming the granting of a summary judgment in favor of the defendant doctor, we stated that expert testimony is generally needed to establish the degree of care and skill required of a physician in diagnosing or treating a patient's ailments and that a person claiming medical malpractice cannot ordinarily have his or her case submitted to a jury without expert testimony supporting the allegation of professional negligence. We also recognized the exception to the general rule that:

---

**3.** In this respect we also note that several of our rules of procedure contain language referring to limitations imposed by statutes. *See, e.g.,* NDRCivP 4(d)(1), 6(a), 11, 13(d), 17(a), 24, 38, 41(a), 43(a), 57, 64, 65, 66, 67, 69, 81; NDRev 301, 501, 510, 802, 1002, 1101. These citations, however, are not inclusive.

**4.** The order for dismissal provides that it was based upon the "briefs, motions papers of both parties and . . . arguments of counsel." The record does not reflect that the motion to dismiss was based on the contents of depositions of Dr. Traynor and Dr. Stoy. The instant case has not reached the procedural posture of a summary judgment.

"... expert testimony is not necessary where the matters to be proved fall within an area of common knowledge and developing lay comprehension of medical techniques and where the results of surgical or medical treatment, viewed in light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence." *Winkjer v. Herr,* 277 N.W.2d at 585.

Dr. Traynor and Fargo Clinic have correctly analyzed the opinion of this Court in *Winkjer v. Herr, supra,* and cases cited therein, emphasizing the need for expert medical opinion in establishing a prima facie case in a malpractice action. We adhere to the legal concept expressed therein, and we recognize that NDCC § 28–01–46 is, to an extent, a codification of existing case law.

The defendants' brief presented valid arguments in support of the legal concept that expert opinion is essential to successfully maintain a malpractice action and that without such expert opinion the action is subject to a summary judgment of dismissal. This is the result of case law independent of any statutory requirements. If we recognize, as we must, that it does not require a genius to draft a complaint[5] it becomes apparent that more is needed than a mere allegation of negligence in a malpractice action. However, the Fortiers' complaint also involves an allegation of the failure to obtain informed consent.[6]

In *Winkjer v. Herr, supra,* we also discussed the doctrine of informed consent. We observed that the doctrine of informed consent is a form of negligence which essentially relates to a duty of a doctor to disclose pertinent information to a patient.

Because of the uncontroverted facts presented in the depositions in the *Winkjer* case, we did not reach the issue of determining if expert medical testimony to show a standard of disclosure among the medical profession was required. Nevertheless, because of the procedural posture of this case, and in the absence of accepted undisputed facts, we deem it inadvisable to comment further on the doctrine of informed consent as it may, or may not, apply to the factual situation in the instant case.

The judgment dismissing the Fortiers' case is reversed and the case is remanded for further proceedings consistent with this opinion.[7]

VANDE WALLE, Acting C.J., PEDERSON, J., and NORBERT J. MUGGLE, Surrogate Judge, concur.

NORBERT J. MUGGLI, Surrogate Judge, sitting in place of PAULSON, J., disqualified.

BENNY A. GRAFF, District Judge, sitting in place of ERICKSTAD, C.J., disqualified.

BENNY A. GRAFF, District Judge (specially concurring).

I concur with the result reached in this case. However, I would conclude this opinion when we determined that § 28–01–46 was not to be applied retroactively. The statements made thereafter regarding the necessity of expert testimony fail to resolve any disputed legal issues or "guide" the District Court in any fashion, and, in part, represent unsolicited advisory comments on matters unnecessary to the determination of this case.

---

5. In footnote 7 in *DeLair v. County of LaMoure,* 326 N.W.2d 55, 63 (N.D.1982), we noted my special concurrence in *Conrad v. Suhr,* 274 N.W.2d 571 (N.D.1979), stating: "In my view it does not require any legal ingenuity to draft a complaint charging someone with negligence ...."

6. See *Wasem v. Laskowski,* 274 N.W.2d 219 (N.D.1979), for discussion of prima facie evidence and jury instructions on informed consent.

7. Because of our conclusion that NDCC § 28–01–46 does not apply to the Fortiers' action, we need not address the remaining issues raised by the Fortiers. These issues are: (1) Even if § 28–01–46 were in effect, it would not require a dismissal, and (2) Section 28–01–46 is an encroachment upon the Court's constitutional authority to promulgate rules of procedure. As to item (2) we note several rules either defer to or accept statutory provisions which are procedural. See footnote 3.