**Wesley J. UMPLEBY, By and Through his co-conservators, Charles UMPLEBY and Geneva Umpleby, Plaintiff and Appellant,**

v.

**STATE of North Dakota, By and Through the NORTH DAKOTA STATE GAME AND FISH DEPARTMENT; and Morton County, North Dakota, a political subdivision, Defendants and Appellees.**

**Civ. No. 10545.**

Supreme Court of North Dakota.

March 29, 1984.

Vogel Law Firm, Mandan, for plaintiff and appellant; argued by Jos. A. Vogel, Jr., Mandan.

Gunhus, Grinnell, Klinger, Swenson and Guy, Moorhead, Minn., for defendants and appellees; argued by Jeffrey Hannig, Moorhead, Minn.

SAND, Justice.

Plaintiff Wesley Umpleby appealed from a summary judgment granted in favor of defendant Morton County in a personal injury action.

In April 1981 Umpleby was injured in a one-vehicle accident on a curve on an access road in an area known as the Schmidt Bottoms south of Mandan between North Dakota Highway 1806 and the Oahe Reservoir. Umpleby sustained injuries which rendered him a quadriplegic. Umpleby contended that his injuries were proximately caused by Morton County's breach of duty to properly design and construct the road. Specifically, Umpleby contended that the county failed to provide the proper superelevation (bank) on the curve in the road.

The road is located on land owned by the United States Corps of Engineers and licensed to the North Dakota Department of Game and Fish. Prior to 1969 the road was an unimproved trail used by hunters and fishermen. In 1969 the corps of engineers and the game and fish department decided to improve the road. The corps and the game and fish department subsequently reached an "agreement" with the Morton County commissioners to widen and gravel about one and one-half miles of the road. Another one-half mile section was improved in 1970. The accident occurred on the curve that joins the two sections.

Each of the three entities contributed about one-third of the cost of the entire project. However, Morton County employees performed the work, using Morton County equipment. No plans or specifications were made and the corps did not provide any supervision. The configuration of the road followed the preexisting trail.

Upon written request from the game and fish department, the Morton County commissioners thereafter authorized periodic blading of the road during 1977. In 1978 the corps hired an independent contractor to regravel the road but no structural changes were made.

Umpleby's complaint originally included the State but the two parties later stipulated to a dismissal. Morton County subsequently made a motion for summary judgment. The court granted the motion and Umpleby appealed.

■ Summary judgment is a procedural device available for promptly and expeditiously disposing of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or whenever only a question of law is involved. *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68, 72 (N.D.1981).

■ In considering a motion for summary judgment the court may examine the pleadings, depositions, admissions, affidavits and interrogatories, and inferences to be drawn therefrom, to determine whether or not summary judgment is appropriate. *First National Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983).

■ Summary judgment is inappropriate if either party is not entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts. *Ibid.*

■ Even when factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result. Such facts, in essence, are not considered material facts. *Spier, supra,* at 72.

■ On appeal from a summary judgment, we view the evidence in a light most favorable to the party against whom the summary judgment was granted. *Clark, supra,* at 267.

■ Generally, negligence actions are not appropriate for summary judgment. However, a negligence action presupposes the existence of a duty. Whether or not a duty exists in a negligence action is a matter of law to be resolved by the court before allowing a jury to hear evidence

concerning a breach of that duty and proximate cause. *DeLair v. County of LaMoure*, 326 N.W.2d 55, 58 (N.D.1982); see W. Prosser, Law of Torts § 37 at 206 (4 ed. 1971). Thus, if Morton County did not owe a duty to Umpleby then summary judgment dismissing Umpleby's complaint was proper.

■ The power of county commissioners to act in matters affecting county roads is a power conferred by statute. See North Dakota Century Code Ch. 24-05. Specifically, NDCC § 24-05-17 provides:

"The board of county commissioners in their respective counties shall have the sole authority and responsibility to acquire land for, construct, maintain and operate the county road system as designated and selected by them."

■ The depositions and affidavits indicate that the road is not a part of Morton County's designated road system under NDCC § 24-05-16 and that it is not located on a congressional section line. In *DeLair* we held that a county or township does not have a duty to maintain an improved road on each section line. *DeLair, supra,* at 61. It follows that a county has no duty to construct roads on land not located on section lines or not part of the county road system.

The road does not connect any part of the county road system nor has the county attempted to condemn the area to obtain an easement over the property for public roadway purposes. See NDCC § 24-05-07. The depositions further reflect that although the road is open to the public, it was not intended as an all-purpose public road. It was originally intended as an access road to the corps facilities on Lake Oahe and it is now also used by the game and fish department. In sum, the road is not a public road in a literal sense. It is merely an access road owned by the corps of engineers and licensed to the department of game and fish. If the corps decided to close the road the county or anyone else would lack effective redress to force it open.

Other factors indicate that control over the road rested with the corps and the game and fish department. The license from the corps to the game and fish department provides that the game and fish department is required to "administer and maintain the said property ... in accordance with the master plan for the said project area" and to "provide appropriate markings at its own expense." Although the county periodically bladed the road during 1977, they did so at the request of the game and fish department. The improvements in 1978 were made pursuant to a contract between the corps and an independent contractor. Morton County was not involved in any manner.

During oral argument to this court Umpleby attempted to place significance upon the fact that the county's work on the last one-half mile of the road in 1970 was done pursuant to a memorandum agreement. Although portions of the agreement are contained in plaintiff's appendix to his brief, there are important sections, including those containing the alleged signatures of the parties, that are absent. Morton County, during oral argument, stated that Morton County did not sign the agreement.

■ A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, and, if appropriate, drawing the court's attention to evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising a material factual issue, or from which the court may draw an inference creating a material factual issue. *Clark, supra,* at 267.

■ In summary judgment proceedings the trial court has no legal obligation or judicial duty to search the record for evidence opposing the motion for summary judgment. This principle is equally applicable, if not more so, to appellate proceedings because the appellate court, except for jurisdictional matters and the taking of judicial notice, generally considers only those issues raised in the trial court. *Ibid.*

■ Umpleby relied upon the law stated in *Clairmont v. State Bank of Burleigh County Trust,* 295 N.W.2d 154 (N.D. 1980), that a person may voluntarily perform an affirmative act and may thereby assume a legal duty that will afford a basis for tort liability. In such cases the standard of reasonable care applies. *Clairmont, supra,* at 158; see Prosser, *supra,* at § 56. Umpleby's reliance upon *Clairmont,* however, is misplaced.

■ Umpleby failed to establish that the county commissioners had the authority to enter into a legal, binding agreement on behalf of the county to do the work. He also failed to establish that the commissioners had the legal authority to volunteer or commit county resources to improve the road in question. The commissioners are not a party to this action.

■ The law regarding the authority of public officers has been established for some time. "In general, the powers and duties of officers are prescribed by the Constitution or by statute, or both, and they are measured by the terms and necessary implication of the grant, and must be executed in the manner directed...." *Kopplin v. Burleigh County,* 47 N.W.2d 137, 140 (N.D.1951) [citing 43 Am.Jur.2d *Public Officers & Employees* § 263 (1972) ]; *Brink v. Curless,* 209 N.W.2d 758, 767 (N.D.1973); *Madrid Lumber Co. v. Boone County,* 121 N.W.2d 523, 525 (Iowa 1963); *South Dakota Employers Protective Assn v. Poage,* 65 S.D. 198, 272 N.W. 806, 809 (1937). Persons transacting business or dealing with public officers are charged with knowledge of the officers' authority. *Cf. Feiler v. Wanner,* 340 N.W.2d 168, 171 n. 2 (N.D.1983); *Roeders v. City of Washburn,* 298 N.W.2d 779, 782 (N.D.1980) (parties dealing with municipalities are charged with notice of the extent of that authority); *Madrid, supra,* at 527

(party bound at its peril to take cognizance of all statutory limitations upon authority of county); *Consolidated Chemical Laboratories, Inc. v. Cass County,* 141 Neb. 486, 3 N.W.2d 920, 922 (Neb.1942) (merchant dealing with counties and county officers must note and respect their powers and duties). Further, 20 C.J.S. *Counties* § 174, p. 1007, states:

"One who contracts with a county is bound to recognize the statutory limitations of its power, and persons dealing with officers or agents of counties are bound to ascertain the limits of their authority or power as fixed by statutory or organic law, and are chargeable with knowledge of such limits."

The Legislature, in 1969, enacted NDCC § 11–11–55, which provides:

"The board of county commissioners shall have the power to enter into agreements with *private landowners* for the purpose of making improvements on *private roads.* The board shall charge the landowner for the improvements made pursuant to such agreement, and such charges shall constitute a line upon the real estate of the landowner in the same manner as personal property taxes are made a lien upon real estate as provided in chapter 57–22." [Emphasis ours.]

■ This section does not grant plenary authority to the county commissioners, but rather limits the authority to private landowners and private roads with the further condition that the expenditure shall constitute a lien upon the property. Neither the corps of engineers nor the state game and fish department are private parties or private landowners, nor is the road in question a private road. This statute does not aid Umpleby.[1]

■ Even accepting, arguendo, that the county commissioners acted pursuant to

---

1. The Legislature, in 1983, enacted NDCC § 11–11–55.1 authorizing the making of improvements in an area provided sixty percent of the landowners petition the commissioners to request the improvement and provide for finances to accomplish the improvement. This law, however, was not in effect at the time. It does, nevertheless, demonstrate that the county commissioners need to have authority before they may undertake to commit any obligation on behalf of the county. Even if this amendment had been applicable at the time it would not have served as a basis for the county commissioners to exercise the authority they did.

authority provided by law, we are convinced that no material fact remains to be resolved regarding their status or liability. Generally, a contractor may be relieved of liability if he followed the contractee's plans or specifications which were defective or insufficient, and the defect or insufficiency caused the damage. *Mayville-Portland School District v. C.L. Linfoot Co.*, 261 N.W.2d 907, 911 (N.D.1978).

Although the record does not contain any specific plans or specifications for the work done by Morton County, the corps has standards for such projects which are contained in the corps' "Engineering Manual." Regarding access roads, the manual states in pertinent part:

"Generally 20 to 22-foot width paved surface, but not to exceed 24 feet; with desirable minimum 4-foot shoulders and 10% maximum grade. Access roads connecting recreation areas with state and county road systems generally will not exceed the road width of those systems."

 The record reflects that the corps' design standards for access roads do not contain criteria for superelevation of curves. In addition, the corps' failure to direct Morton County, or anyone else, to make alterations on the road and its payment of a portion of the project indicates that the corps tacitly accepted Morton County's work. From this any reasonable person may draw an inference that the work met the specifications of the corps.

 We conclude that Morton County had no legal duty to construct and maintain or exercise actual control over the road upon which Umpleby was injured. The County was a mere instrumentality for performance of the improvements and owed no duty to the plaintiff and thus summary judgment was appropriate.

Affirmed.

ERICKSTAD, C.J., and GIERKE and PEDERSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with the result reached in the majority opinion, but I am not convinced that the County had no authority to enter into a legal, binding contract on behalf of the County to do the work on the road in question. Section 11-11-55, N.D.C.C., when read together with Chapter 54-40, N.D.C.C., involving joint exercise of governmental powers, could result in a conclusion that the County had authority to contract with the Corps of Engineers and the State Game and Fish Department to improve the road. However, I agree with the majority opinion that if the County Commissioners had such authority it was as a contractor and that the road was built to the specifications and satisfaction of the Corps of Engineers. Because the County had virtually no control over the design, construction, maintenance, or signing of the road, it owed no duty to the plaintiff.