[No. 11564. Department Two. April 25, 1914.]

PETER BELLES *et al., Appellants,* v. THE CITY OF TACOMA, *Respondent.*[1]

MUNICIPAL CORPORATIONS—PUBLIC BUILDINGS—MAINTENANCE—DEGREE OF CARE—NEGLIGENCE. Under the rule that a city owes only reasonable care in keeping buildings in repair, it is not negligence for a city to permit the use of a floor in a municipal dock after the center of one of the boards became worn down a quarter of an inch below the common level.

SAME—DEFECTS—NOTICE. A city is not liable for injuries sustained by one who slipped and fell upon the floor of a municipal dock, one board of which had worn faster than the others, until it was slightly grooved and about a quarter of an inch below the com-

[1]Reported in 140 Pac. 324.

mon level, where there was no evidence that the city had notice of the defect or that, of numerous persons passing over the floor daily, any one had previously slipped or fallen thereon.

Appeal from a judgment of the superior court for Pierce county, Easterday J., entered March 1, 1913, dismissing an action in tort, upon granting a nonsuit. Affirmed.

*Burkey, O'Brien & Burkey*, for appellants.

*T. L. Stiles* and *Frank M. Carnahan*, for respondent.

FULLERTON, J.—The appellants, husband and wife, brought this action against the respondent to recover for personal injuries, sustained by the wife from a fall upon the floor of a public building owned by the respondent city, commonly known as the municipal dock. The appellants were nonsuited in the court below, and appeal from the judgment entered against them.

At the time of her injury, Mrs. Belles, the injured appellant, was passing hurriedly through the building from a boat landing, intending to take a car, which was then about due, to her home. As she reached a point in the building described as opposite the ticket office, she, in some manner, slipped and fell to the floor, striking on her side and dislocating her shoulder. The appellant was accompanied at the time by a number of ladies, three of whom testified in her behalf at the trial. Their testimony, on cross-examination, was to the effect that they noticed no unusual condition in the floor where the fall occurred, or defect therein, although they stayed at the place of the accident, waiting for relief to arrive, for several minutes after the accident occurred. Some two or three days later, the place was examined by another witness. He testified that one of the boards in the floor seemed to have been composed of softer material than the surrounding boards, and had worn somewhat faster, the effect being that it was slightly grooved out towards its center, leaving it in the shape of a trough, the deepest part being in the middle of the board. The witness did not at-

tempt to measure the actual depth of the groove, but estimated that the deepest part of the groove was about a quarter of an inch lower than the surrounding level. He further testified that the board bore marks made by nails in the shoes of other persons passing over it, indicating that they had also slipped on the board. The evidence also showed that the general contour of the floor was level at the place of the accident and was kept oiled by the municipality. There was no evidence, however, that the oil added to the slipperiness of the floor, or in any way added to the danger of passing over it. Nor was there any evidence that the city had knowledge that this particular board in the floor was grooved in the manner indicated, further than such knowledge might be implied from its actual condition. There was no evidence that any person had theretofore fallen because of the groove, or that the city had knowledge that any person had slipped thereon, although it was in evidence that many people passed over the floor daily.

The appellants argue that the evidence disclosed such a degree of negligence on the part of the respondent as to carry to the jury the question of its liability for the injury suffered by the appellant, and that, in consequence, the trial judge erred in granting a nonsuit. But without following the argument by which the proposition is sought to be maintained, we think it not supported by the record. In its care of the building, the city did not owe to the public that high degree of care imposed upon carriers of passengers. Its duty in this respect was performed if it exercised reasonable and ordinary care and diligence in keeping the building in repair; the same degree of care that is imposed upon a city with reference to its streets and other public places open to the use of the public. Plainly, it would be laying down a harsh rule to say that a city became guilty of negligence whenever it permitted a plank in a board walk, or a slab in a concrete walk, to remain in place whenever its center became worn down a quarter of an inch below the common level.

Rules governing the imperative duties of cities with regard to keeping its streets and buildings in repair must be reasonable and practicable rules, else the burden of supporting the government therein will necessitate an abandonment of all government.

Again, we think the judgment may rest on another ground. There was no evidence to show notice on the part of the city that the floor was defective, even conceding it so. True, the officers of the city could have discovered, by an examination of the floor, that the particular plank complained of had worn faster than other planks surrounding it, and that its center was, to a certain degree, lower than such surrounding planks. But they were not bound by this to assume that it was in such a defective condition as to be dangerous. The common observations of their every day life would tell them that it was not so; and, more than this, they knew that many persons passed over this particular floor daily with safety. If it had been shown that other persons had slipped thereon so as to lose their balance or fall, and this fact had been brought home to the officers of the city, a different question might have been presented. But the fall of a single person proves nothing. Persons have been known to slip and fall on the best constructed walks. Nor do we think the evidence to the effect that there were nail marks on the board of any moment on the question of the dangerous condition of the defect. They could have been made, and are usually made, by scuffing the heels and can be found on any floor generally used by the public where heel marks show.

The judgment should be affirmed, and it will be so ordered.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.