[No. 14453. Department One. March 22, 1918.]

AUGUST PETERSON, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK — IMPUTED NOTICE OF DEFECT — EVIDENCE — SUFFICIENCY. Findings of a city's imputed notice of a defect in a sidewalk are sustained where it appears that there was a defective iron trap-door in a cement sidewalk in a dense business section, that it was smooth and springy, probably due to its manner of construction, and the smoothness of the surface indicated it was not recently placed there.

TRIAL—RECEPTION OF EVIDENCE—WAIVER OF OBJECTION. Where a copy of a claim against the city was attached to the complaint, and plaintiff's counsel offered to file a certified copy if the city attorney insisted upon it, his remark that he would like to have the court look at it, without other objection, is a waiver of formal proof of filing.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered July 23, 1917, upon findings in favor of the plaintiff, in an action for personal injuries sustained through a defective sidewalk, tried to the court. Affirmed.

*Hugh M. Caldwell* and *Frank S. Griffith,* for appellant.

*Thomas J. Casey,* for respondent.

PARKER, J.—The plaintiff, Peterson, seeks recovery of damages for personal injury which he claims to have sustained as the result of the negligence of the defendant city in maintaining or permitting to exist a dangerous defect in one of its sidewalks situated in the business section of the city. Trial in the superior court for King county sitting without a jury resulted in findings and judgment in favor of the plaintiff, awarding him damages in the sum of $500, from which the city has appealed to this court.

[1]Reported in 171 Pac. 657.

The principal contention here made by counsel for the city is that the evidence fails to show that the city had notice of the existence of the defect in the sidewalk which caused respondent's injury. There was no evidence introduced showing actual notice on the part of the city, so our problem is, was the defect such as to warrant the trial court in concluding that notice thereof should be imputed to the city. Respondent testified in part as follows:

"I was walking down on First avenue, and there was a little snow and ice, and I as I come near that hotel . . . the Wright hotel; walking along the same as I always do, and all at once I just fell back, just tight as I could, and my feet went up in the air, and I lay stunned there. . . . There are some trap-doors, and they are rounding, and also they were slippery, and they also were sprung, . . . so that they go down. Q. Tell the court what kind of sidewalk it is all around those trap-doors, whether it is a board sidewalk, or a cement sidewalk? A. It is cement. I haven't seen any all over the city—I never saw any such trap-doors. It is a public death trap. There ought to be some other doors, which are rough; but those are perfectly smooth, and then rounded, and they give way. Q. What do you mean by them giving away? A. Sink down. Q. When there is weight applied to them on the upper side? A. Yes, sir; when you step on them in the middle they sink down. Q. Does the cement sidewalk sink down if you step on that? A. No; it is the trap-door. The sidewalk is all right. It is only the trap-doors that knocked me out. Q. The sidewalk was all covered with snow, wasn't it? A. Yes, sir. Q. Was it uncovered at that time so you could see it; that is it was so you could see the iron? A. No. Q. Did you clear it off? A. I did not clear it off. My foot did. . . . Q. You were able at that time to observe the door and look at it. Did you examine it that day? A. No, sir; but I have examined it many times since. Q. How many people do you think walk over that sidewalk in a day? A. I don't know; lots of them. Q. Thousands

of them? A. Yes. Q. I say snow is pretty dangerous stuff. A. It is the doors themselves, and the giving away. If they had been solid I never would have slipped. Q. How much did those doors give? A. Give an inch or two. Q. Aren't they smooth and level with the sidewalk? A. They are smooth and round. . . . They are smooth and level with the sidewalk, but there is a kind of rounding, just as smooth as glass too, and when you step on them, unless they fixed them, they give way. Q. You have been down there a number of times since? A. Yes. Q. Are they the same now as they were then? A. They look the same.''

None of this testimony is disputed. Indeed, the city offered no evidence upon the trial. We note that the leading questions above quoted were asked respondent by counsel for the city upon cross-examination. We have quoted the testimony only in so far as it touches the question of imputed notice of the defect to the city, there being no question presented here as to the existence of the defect or as to its being the proximate cause of respondent's injury.

Counsel for the city rely upon our decisions in the following cases: *Wilton v. Spokane,* 73 Wash. 619, 132 Pac. 404, L. R. A. 1917D 234; *Belles v. Tacoma,* 79 Wash. 200, 140 Pac. 324; *Chase v. Seattle,* 80 Wash. 61, 141 Pac. 180; *MacDermid v. Seattle,* 93 Wash. 167, 160 Pac. 290.

In the *Wilton* case, independent contractors doing construction work for the city had left a concealed charge of dynamite in the street. Some time after the completion of the work, the plaintiff, a workman engaged in setting power line poles, came in contact with the dynamite causing it to explode, resulting in his injury. The city had no actual notice of its being there, and it was held that no notice thereof could be imputed to the city, since the dynamite was concealed, and ''there was no sort of diligence that the city could have

exercised which would have made it acquainted with the fact.'' Plainly, that is quite a different situation from the one here involved, in so far as we are concerned with the question of imputed notice to the city.

In the *Belles* case, the alleged defect consisted of a very shallow worn depression in the floor of the waiting room of the city's municipal dock. The depression was only about a quarter of an inch below the common level of the floor. While it was held, as a matter of law, that such a small defect in the floor would not render the city liable in damages, upon the question of knowledge of the defect being imputed to the city authorities, we said:

"True, the officers of the city could have discovered, by an examination of the floor, that the particular plank complained of had worn faster than other planks surrounding it, and that its center was, to a certain degree, lower than such surrounding planks. But they were not bound by this to assume that it was in such a defective condition as to be dangerous. The common observations of their every day life would tell them that it was not so; . . .''

That was little else than a holding that the defect was so insignificant in character that even knowledge of it on the part of the city would not be knowledge that its existence was suggestive of danger to the people passing over it. We are not satisfied that this defect can be so viewed.

In the *Chase* case, the alleged defect was in a street partly closed to public travel because of the construction of a sewer therein, and known to be so closed by the plaintiff, who was injured by driving upon it. The principal ground of the decision against the plaintiff was his own negligence and want of care. The particular defect, however, had existed only a few hours and was evidently caused by rain falling the night

previous, and, therefore, under the particular circumstances of the case, knowledge thereof was held not imputable to the city. It was not a defect at a point where there was supposed to be any considerable amount of travel at the time. We think that decision is not controlling in this case.

The *MacDermid* case is in point here only in that it lays down a general rule touching the comparative degree of care a city must exercise in maintaining its streets and sidewalks under differing conditions in different portions of the city. On page 170 of the decision, we said:

"The third claim of error is that the court erred in using this language in an instruction:

"'In a remote locality, a suburb of the city, where the highway is seldom or infrequently used, the same degree of care would not be expected, as in a locality where crowds assemble and where travel is frequent.'

"This is only part of an instruction in which the court charged the jury that the degree of care imposed by law on the city in maintaining its streets was in proportion to the danger to be apprehended from the use of the streets, and that in determining such question the circumstances and surroundings with regard to the place of accident should be taken into consideration. Reading this instruction as a whole, we see no fault in it."

This had reference to the question of imputed notice to the city of the defect. There was no proof of actual notice in that case. The defect here in question causing the injury to respondent was in a sidewalk located in a dense business section of the city where thousands of people passed every day, so the rule approved in the *MacDermid* case seems applicable here.

That notice of a defect in any portion of the street of a city may be imputed to the city, from the existence thereof for such time as would ordinarily bring it to

the knowledge of reasonably prudent officers charged with the duty of maintaining such street in a safe condition for travel, seems to be well settled law.    See *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, in addition to the cases above noticed.    If the defect be one existing in a remote and sparsely populated residence suburb of the city where there is but little travel and little occasion for diligence on the part of the city officers looking to the care of streets, no doubt a defect of no very serious nature would not be presumed to be known to the city authorities for some considerable time following its coming into existence. And a very serious and dangerous defect in such an isolated district, it would also seem, should be presumed to become known to the city authorities in a shorter time.    It would also seem that, when a defect in a sidewalk exists in a dense business section of a large city, where the city is charged with a much greater degree of care in maintaining its streets in a safe condition for public use, the city ought to be presumed to know of defects therein which are, or might be, reasonably expected to endanger persons traveling thereon very soon after the coming into existence of such defects.    These considerations lead to the conclusion that the question of the time within which notice of a defect in a public street should be imputed to the city is determinable largely from the circumstances of each particular case.

We have then these facts, which seem to us sufficient to warrant the trial court in imputing to the city knowledge of the defect in question:    (1) The existence of the defective trap-door in the sidewalk in a dense business part of the city; (2) the smooth and springy condition of the trap-door suggesting the probability of accident to some one passing over it, especially in that

locality where so many people passed over it; (3) the probability that the then condition of the trap-door was the result of its manner of construction, and (4) the smoothness of the surface of the trap-door, suggesting that it was not recently placed there. These facts may not very conclusively support the trial court's decision on the question of the city's imputed knowledge of the defect, but since the city offered no evidence touching this question, we feel constrained to leave the trial court's conclusion undisturbed.

Some contention is made in appellant's behalf that respondent cannot recover because of failure of proof of the filing of his claim with the city prior to the commencing of this action. The filing of his claim in due form was pleaded by respondent and a copy thereof attached to his complaint. The general denial of the city in its answer seems to deny this allegation of respondent's complaint. When respondent's case was rested at the trial, his counsel said to the court: "Outside of the certified copy of the claim which I will file, if counsel insists on it, that is the plaintiff's case," to which counsel for the city replied: "I would like to have Your Honor look at it." Counsel for the city did not make any motion or further remarks to the trial court suggesting failure of proof in this particular. A copy of the claim being attached to the complaint and before the court, we think, under the circumstances, the remarks of counsel for the city should be construed as a waiver of formal proof of the filing of respondent's claim. In other words, the attitude of counsel for the city should be construed as an admission of the fact of filing the claim, though not of its sufficiency as to form. It is not now contended, however, that it was deficient in form.

The judgment is affirmed.

ELLIS, C. J., and WEBSTER, J., concur.

ON REHEARING.

[*En Banc.*   June 19, 1918.] ·

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court still adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment is affirmed.