[File No. 7277]

MARY JANE DAHL, by Father and Guardian Ad Litem, Sanford O. Dahl, Respondent, v. HENRY NELSON, Respondent and The City of Fargo, a Municipal Corporation, Appellant.

(56 NW2d 757)

Opinion filed January 26, 1953

*Conmy & Conmy,* appellant.

*Lanier & Lanier* and *Wattam, Vogel & Bright,* for respondents.

BURKE, J. In this action plaintiff, guardian ad litem for his daughter, sought to recover damages for injuries received by her, as the result of a collision of an automobile, in which she was riding as a guest, with the top of a manhole encasement inset at the center of one of the streets of the City of Fargo. It was alleged in plaintiff's complaint that plaintiff's daughter's injuries were proximately caused by the gross negligence of the driver of the car, Henry Nelson, and by the negligence of the City of Fargo. Trial of the action resulted in a verdict for the dismissal of the action as to the defendant, Nelson, and a verdict for damages against the defendant City of Fargo. Judgment was entered accordingly. After judgment, the defendant, City of Fargo, moved for judgment notwithstanding the verdict or for a new trial. This motion was denied and the City of Fargo has appealed from both the order denying the motion and from the judgment. There are ten specifications

of error, which appellant, for purposes of the argument, has grouped under five general headings. The first of these is that the court erred in denying appellant's motion for directed verdict, made at the close of the trial of the case. Since we have concluded that the defendant city was entitled to a directed verdict upon one of the grounds urged and since that conclusion disposes of this appeal we shall confine our discussion to the issues arising in connection with that particular ground; namely, that there is no proof in the record that the defendant City of Fargo had any actual or constructive notice of the obstruction with which the automobile, in which plaintiff's daughter was riding, collided.

The accident occurred at about 8:30 P.M. on May 19th on 7th Ave. N. near its intersection with 18th St. in the City of Fargo. When dry, 7th Ave. had a gravel and cinder surface but that evening "the streets in that area were muddy, pock marked with water and rutty." "There was one main traversed rut going down the center of the road, with considerable mud on either side of the road and in between the ruts, which were six to eight inches deep." The two ruts straddled the manhole encasement set in the center of 7th Ave. and the defendant, Nelson proceeding westward on 7th Ave. driving with his wheels in the ruts struck the top of the encasement with some part of the undercarriage of his car. The level of the general street surface was even with the top of the manhole, but it is clear that at the time of the accident, because of the single track through the mud and the depth of the ruts, the casing of the manhole had become an obstruction to traffic. The mere presence of an obstruction of this type in a street and the occurrence of an accident is not sufficient to fix liability upon a city. Before liability can attach to a city because of an unsafe condition of a street, which the city did not itself create, it must be shown that the city had actual or constructive notice of the condition. Smith v. City of Yankton, 23 SD 352, 121 NW 848; Williams v. Wessington Twp., 70 SD 75, 14 NW2d 493; Scoville v. Town of West Hartford, 131 Conn 239, 38 A2d 681; Tillotson v. City of Davenport, 232 Ia 44, 4 NW2d 365; Gerber v. City of Pittsburgh, 343 Pa 379, 22 A2d 721.

In this case plaintiff contends that the evidence is sufficient to make the question of notice, either actual or constructive, a question for the jury. The evidence he relies on is contained entirely in the testimony of the witness, Willits. This witness lived in the neighborhood where the accident occurred. He drove back and forth on 7th Ave. N. regularly. About ten days before the accident he noticed that the cover of the manhole with which we are concerned was "tipped over", that is to say; it was in place but it was upside down. He stopped and replaced the cover in its proper position. He told no one of this incident at that time. Upon the day of this occurrence it was more or less dry and there were no ruts in the street. Probably the same day, but within a day or two afterwards, he noticed that some cinders had been placed around the manhole. On the day of the accident, between five and six o'clock P.M. he drove west on 7th Ave. N. When he came to the manhole he crowded one of his front wheels against the wall of the manhole and thus lifted his car so that he had no trouble. When asked for how long a time he had been crossing the manhole in this manner he replied, "I can't remember exactly but it was for about one day." The argument is made that from this evidence the jury reasonably could have inferred that the manhole casing had been struck by a passing vehicle ten days before the accident with sufficient force to turn the cover upside down; that at that time therefore, the condition of the street was dangerous to traffic; that a street maintenance crew attempted to remove the danger by placing cinders around the manhole, and, because of the subsequent accident, that the maintenance work had been negligently done. The argument is not sound in that its premises are in some respects purely speculative and in others, contrary to positive testimony. The testimony of Willits affirmatively established that at the time he found the manhole cover upside down, the street was not dangerous to traffic. He stated that the day was more or less a dry day and that at that time there were no ruts in the street. This testimony together with the uncontradicted testimony that the top of the manhole casing was even with the level of the street clearly demonstrates that at that time the manhole casing was not an obstruction or a

potential danger to traffic on the street. In the circumstances any conclusion as to the cause of the overturning of the manhole cover would be nothing but a guess or speculation. It might have been flipped over by being struck sharply by the tire of a passing vehicle or it might have been left upsidedown by some workmen, it could not have been overturned by being struck by the frame or undercarriage of a passing vehicle. The jury might justifiably have reached the conclusion that the cinders were placed around the manhole by city employees. But at the time the cinders were placed, the street was relatively dry, there were no ruts, and the manhole casing did not project above street level. In short, there was no apparent danger of which the city employees could take notice. It is clear therefore that there is no proof that the city had actual notice that the manhole casing was, or was likely to become an obstruction to traffic in the street.

The evidence as to constructive notice is also insufficient to submit the question to the jury. The street was relatively dry ten days before the accident. It was very wet and muddy on the day of the accident. Presumably the change in the condition of the street was due to rain which fell in the ten day interval. There is, however, not a word in the testimony as to the amount of rain or when it fell. There is evidence that there were no ruts in the street ten days before the accident and that there were ruts on the day of the accident but there is no evidence as to when the ruts started to form or first reached a dangerous depth. The only evidence as to the duration of time the ruts were in the road was Willits' statement that "for about one day" he crowded the manhole with one front wheel in order to lift the car over. From this statement the jury could conclude that a potentially dangerous situation had existed in the street all day on the day of the accident. We are satisfied that the existence of this potentially dangerous condition, out of which an obstruction to traffic might develop, for such a duration of time cannot, as a matter of law, be construed to be constructive notice. Before constructive notice of a defect in a street will be imputed to a city, the defect must have existed for a sufficient length of time to afford municipal authorities a reasonable

length of time to discover it and to take some steps to protect the public. Maloney v. Grand Forks, 73 ND 445, 15 NW2d 769. What constitutes a reasonable length of time in any case depends on the circumstances of that case. As was said in Peterson v. City of Seattle, 100 Wash 618, 171 P 657, 658:

"If the defect be one existing in a remote and sparsely populated residence suburb of the city where there is but little travel and little occasion for diligence on the part of the city officers looking to the care of the streets, no doubt a defect of no very serious nature would not be presumed to be known to the city authorities for some considerable time following its coming into existence. And a very serious and dangerous defect in such an isolated district it would also seem should be presumed to become known to the city authorities in a shorter time. It would also seem that, when a defect in a sidewalk exists in a dense business section of a large city, where the city is charged with a much greater degree of care in maintaining its streets in a safe condition for public use, the city ought to be presumed to know of defects therein, which are or might be reasonably expected to endanger persons travelling thereon, very soon after the coming into existence of such defects."

In Scoville v. Salt Lake City, 11 Utah 60, 39 P 481, it was said:

"The question of notice is not alone determined from the length of time a defect has existed but also from the nature and character of the defect, the extent of the travel, and whether it is in a populous or sparsely settled part of the city."

In order for the city to have had sufficient notice in the instant case, it would have been necessary for the city to have had notice, first, that there was a single track down the center of the road which straddled the manhole; and second, that the ruts of the track were of sufficient depth so it should have reasonably been anticipated that they would eventually become deep enough to make the manhole casing an obstruction. Notice that the street was wet, had an unpaved surface and that some ruts might develop of course could be imputed to the city. From notice of these facts, however, it cannot be said that the city officials should have anticipated that the traffic upon the street would create a single track astride the manhole, rather than one

track for west bound traffic north of it and another for east bound traffic south of it, or that the ruts created by the traffic would become of dangerous depth. To say that the existence, for a period of one day, of ruts astride the manhole, of sufficient depth to make the witness Willits consider them dangerous, is sufficient to impute to the city notice of a defect, which was potentially but not certainly dangerous, would be to say that reasonable maintenance of the city's streets required those charged with the duty of street maintenance in the City of Fargo to make a careful inspection of all of the unpaved streets in all of the outlying districts of the city within twenty-four hours after every rain, taking notice of the location of ruts, measuring or estimating their depth and reaching an accurate conclusion as to whether the ruts might eventually reach a depth which would become dangerous. In other words it would burden a city with the duty of exercising not only the highest possible degree of care but a degree which in some instances would be impossible. Such is not the measure of a city's duty. A city is only required to exercise reasonable care to discover and remedy defects in its streets. 63 C. J. S. (Municipal Corporations Sec. 830) 170.

In other jurisdictions the existence of defects for periods of varying length have been held not to constitute constructive notice, as a matter of law, as follows: Four weeks, Williams v. Carterville, 97 Ill App 160; three weeks, Colby v. Portland, 85 Or 359, 166 P 537; six days, Allen v. East Buffalo Twp., 22 Pa Co 346; four days, Corey v. City of Ann Arbor, 134 Mich 376, 96 NW 477; two days, Moblo v. Lansing, 243 Mich 465, 220 NW 890; a day and a half, Brennan v. New York, 130 App Div 267, 114 NYS 578; and one day, City of Warsaw v. Dunlap, 112 Ind 576, 11 NE 623, 14 NE 568; McKee v. New York, 135 App Div 829, 120 NYS 149.

Since, as a matter of law, the evidence in this case is insufficient to establish either actual or constructive notice of the defect in the street which caused the injuries suffered by plaintiff's daughter and there appears to be no reasonable probability that the deficiencies in the proof can be supplied upon a new trial, the judgment of the district court against the City of Fargo is reversed and the case ordered dismissed.

MORRIS, C. J., and SATHRE and GRIMSON, JJ., concur.

CHRISTIANSON, J.   I agree that the evidence in this case is insufficient to establish notice to the City of Fargo of the defect in the street, which resulted in injury to Mary Jane Dahl. However, the evidence does not establish that the city and its employees did not have such notice.   There is merely a lack of evidence of sufficient probative force to show that they had. The city and its employees may have had such notice but the evidence fails to show it.   The mere fact that the evidence was such that the trial court ought to have granted defendant's motion for a directed verdict or ordered a new trial on the ground of the insufficiency of the evidence to sustain the verdict does not alone warrant this Court in ordering such judgment. "It must also clearly appear that there is no reasonable probability that the defects in, or objections to, the proof, necessary to support the verdict, may be remedied upon another trial." First State Bank v. Kelly, 30 ND 84, 99, 152 NW 125, 129–130, Ann Cas 1917D 1044.   "The power of an appellate court, on reversing a judgment, to order or direct final judgment is cautiously exercised."   5 C. J. S. p. 1428.   This Court "is not absolutely obliged to render and direct final judgment" because the evidence is insufficient to establish some material fact found by the verdict, it is permitted to exercise judicial discretion and judgment.   Where the evidence shows to a certainty that the plaintiff has no cause of action, and that the defendant is entitled to judgment as a matter of law then, of course, judgment should be ordered and rendered notwithstanding the verdict; but where the admitted facts do not show that the defendant is entitled to judgment as a matter of law, or where it appears that the defects in the proofs may be supplied and plaintiff's case strengthened on another trial, this Court may not, and I think should not, order final judgment, but should instead order a new trial.   McClintock v. Ayers, 36 Wyo 132, 253 Pac 658, 255 Pac 355; Vallavanti v. Armour & Co., 264 Mass 337, 162 NE 689; First State Bank v. Kelly, supra.

I am inclined to the view that final judgment should not be ordered, but that the case should be remanded for a new trial to

the end that the plaintiff may have an opportunity to supply the defect in the proof as to notice to the City of Fargo of the defect in the street, if such proof is available, and the record in this case does not show that it is not.