Troy DIEGEL, individually and as Trustee for the North Dakota Workers Compensation Bureau, Plaintiff and Appellant,

v.

CITY OF WEST FARGO, Defendant and Appellee,

Joel GEHRKE, Defendant, Third–Party, Plaintiff, and Appellant,

and

Tami Gehrke, Additional Defendant, Third–Party Plaintiff, and Appellant,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, a corporation, Third–Party Defendant and Appellee.

Civil No. 950311.

Supreme Court of North Dakota.

April 25, 1996.

Kim E. Brust, Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for plaintiff and appellant Troy Diegel.

Leland F. Hagen, Lee Hagen Law Office, Ltd., Fargo, for defendants, third-party plaintiffs and appellants Joel Gehrke and Tami Gehrke.

Kim E. Brust argued for all the appellants.

Ronald F. Fischer, Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for defendant and appellee City of West Fargo.

James S. Hill, Zuger Kirmis & Smith, Bismarck, for third-party defendant and appellee Burlington Northern. Submitted on brief.

SANDSTROM, Justice.

Troy Diegel, individually and as trustee for the North Dakota Workers Compensation Bureau,[1] Joel Gehrke, and Tami Gehrke (collectively referred to as plaintiffs) appealed from a summary judgment dismissing their negligence claims against the City of West Fargo for injuries incurred in a motor vehicle accident at a railroad crossing in West Fargo. We hold summary judgment dismissing the plaintiffs' negligence claims against West Fargo was proper because West Fargo had no duty to change the grade of the street, or to post a speed limit or other warning sign near the crossing. We therefore affirm the summary judgment.

## I

At about 6:30 a.m. on November 6, 1989, pickup trucks driven by Diegel and by Joel Gehrke collided head-on at a "hump back" Burlington Northern railroad crossing on 9th Street East in West Fargo. The railroad crossing was on the crest of an eight-foot rise, and drivers of vehicles approaching the crossing could not see vehicles approaching from the other direction.

Diegel brought a negligence action against Joel Gehrke and West Fargo. Gehrke counterclaimed against Diegel and cross-claimed against West Fargo. Gehrke's wife, Tami, also filed a negligence claim against Diegel and West Fargo for loss of consortium. The plaintiffs all alleged West Fargo was negligent because the slope of the street created a visual obstruction which was unreasonably dangerous.

The Gehrkes also filed a "third-party complaint and direct claim" against Burlington Northern, alleging it was liable for their damages and for any damages which Joel Gehrke was required to pay to Diegel. The claims between Diegel and the Gehrkes were ultimately settled. Burlington Northern then moved to dismiss the Gehrkes' "third party complaint and direct claim." The Gehrkes conceded their contribution claim against Burlington Northern was improper and sought to realign the parties. They moved to amend the pleadings to join Bur-

lington Northern and the Gehrkes' underinsured motorist carrier, American Family Mutual Insurance, as defendants and to consolidate the claims into one action. The district court dismissed without prejudice the Gehrkes' "third-party complaint and direct claim" against Burlington Northern. The court also denied the Gehrkes' motion to amend and consolidate their claims into one action.

West Fargo then moved for summary judgment on the plaintiffs' negligence claims against it. The plaintiffs resisted West Fargo's motion, contending the slope of the street created a visual obstruction which was unreasonably dangerous. They asserted West Fargo had a duty to change the grade of the street to improve the sight line for drivers approaching the crossing, or to post a speed limit or other warning sign near the crossing.

The district court granted summary judgment for West Fargo. The court held the plaintiffs' negligence claims were barred under N.D.C.C. § 32–12.1–03(3), because West Fargo had discretionary immunity to decide whether to change the grade of the street, or to post a speed limit or other warning sign near the crossing. The court also held West Fargo had no duty to change the grade of the street, or to post a speed limit or other warning sign near the crossing. The plaintiffs appealed from the summary judgment.

The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). We have jurisdiction under N.D. Const. Art. VI, §§ 2, 6, and N.D.C.C. § 28–27–01.

## II

The plaintiffs contend the district court erred in granting West Fargo summary judgment. They argue the court erred in concluding their claims were barred by discretionary immunity under N.D.C.C. § 32–12.1–03(3), and in holding West Fargo had no duty to correct or warn of the dangerous condition which it knew existed on the street.

---

1. *See Diegel v. North Dakota Workers Compensation Bureau,* 469 N.W.2d 151 (N.D.1991).

Those issues are raised in the posture of summary judgment.

## A

Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Osterman–Levitt v. MedQuest, Inc.*, 513 N.W.2d 70, 72 (N.D.1994). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can be reasonably drawn from the evidence. *Ellingson v. Knudson*, 498 N.W.2d 814, 817 (N.D.1993).

## B

The plaintiffs contend the district court erred in concluding West Fargo had no duty to change the grade of the street, or to post a speed limit or other warning sign near the crossing. They argue genuine issues of material fact exist about whether the sight line for drivers approaching the railroad crossing created a dangerous condition in the street and whether West Fargo had notice of the condition.

Actionable negligence consists of a duty on the part of an allegedly negligent person to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty. *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 576 (N.D.1990); *Carlson Homes, Inc. v. Messmer*, 307 N.W.2d 564, 566 (N.D.1981). If no duty exists on the part of the alleged tortfeasor, there is no actionable negligence. *DeLair v. County of La-Moure*, 326 N.W.2d 55, 58 (N.D.1982); *Belt v. City of Grand Forks*, 68 N.W.2d 114, 119 (N.D.1955). Although negligence actions are ordinarily not appropriate for summary judgment, whether a duty exists is generally a preliminary question of law for the court to decide. *Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 406 (N.D.1994);

*DeLair* at 58. If the existence of a duty depends upon factual determinations, the facts must be determined by the trier-of-fact. *Rawlings* at 577; *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840, 843 (N.D. 1986). Issues of fact, however, may become issues of law for the court, if reasonable persons could reach only one conclusion from the facts. *Rawlings* at 577.

The plaintiffs have cited no statute or rule requiring West Fargo to change the grade of the street, or to post a speed limit or other warning sign near the crossing. *Compare Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 578 (N.D.1991) (Uniform Manual on Traffic Control Devices required county to post warning sign at intersection). A municipality, however, has a duty under negligence principles to exercise reasonable care to keep its streets reasonably safe for use by the public and to guard against unreasonably dangerous conditions which can be foreseen in the exercise of reasonable prudence and care. *See DeLair* at 62; *Belt* at 119–120; *Dahl v. Nelson*, 79 N.D. 400, 56 N.W.2d 757, 761 (1953); *Maloney v. City of Grand Forks*, 73 N.D. 445, 15 N.W.2d 769, 773 (1944); *Braatz v. City of Fargo*, 19 N.D. 538, 125 N.W. 1042, 1043 (1910); *Ludlow v. City of Fargo*, 3 N.D. 485, 57 N.W. 506, 507–508 (1893); *Larson v. City of Grand Forks*, 3 Dak. 307, 19 N.W. 414, 416 (1884). *See* 19 McQuillin, Municipal Corporations § 54.11 (3rd Rev. Ed.1994).

In *DeLair*, this Court affirmed a summary judgment dismissal of a negligence action against a county, a township, and private landowners for injuries sustained by a motorcyclist who drove through a "T" intersection of a county highway and a township road and hit a gate on the private landowners' property. The motorcyclist alleged the defendants had breached their duty to protect others from unreasonable risks. This Court held, as a matter of law, the defendants had no duty to the motorcyclist, because the intersection was controlled by a stop sign and was not a pit, structure, excavation or trap which was unreasonably dangerous or hazardous to a driver exercising ordinary care. *DeLair* at 63. The majority said, "[t]he duties of the various political subdivisions in connection

with building and maintaining roads do not include a lagniappe in the form of additional precautionary measures to protect persons from their own careless acts." *DeLair* at 62.

In *Belt*, the plaintiff, a passenger in an automobile driven by her husband, was injured when her husband failed to turn at a "jog" in an intersection at Ninth Avenue and South Washington Street in Grand Forks and drove west across South Washington into an embankment in the ditch. The plaintiff brought a negligence action against Grand Forks, alleging it had a duty to protect the public with suitable warnings or barriers to prevent travelers from running into the ditch. The plaintiff asserted Grand Forks was negligent in constructing and improving only the middle thirty feet of South Washington; permitting vegetation to grow on the embankment; failing to place a stop sign at the intersection; failing to warn of the "jog" in the road; and failing to put a street light at the intersection. After the parties had presented evidence and before the case was submitted to a jury, the trial court dismissed the action.

On appeal, this Court affirmed the dismissal, holding, as a matter of law, Grand Forks did not have a duty to correct the alleged defects in the street. *Belt* at 123. In analyzing the plaintiff's claim for failure to warn of the "jog" in the road, this Court said the facts clearly showed the "jog" did not create a pitfall, trap, or snare, and concluded Grand Forks was not "chargeable with liability for failure to maintain barriers, lights or warning signs or notices at the point of an offset or jog in a street, where the same could not constitute a dangerous situation to a prudent driver. In nearly every city of any size some streets are laid out and improved without uniformity as to width or direction, resulting in 'jogs', 'offsets', or 'goosenecks'. We are convinced that the law does not require a municipality to maintain either barriers or warning devices at such places." *Belt* at 121. This Court summarized:

> "Since no duty was imposed upon the city of Grand Forks in connection with any of the alleged acts of negligence urged as a basis for recovery, the plaintiff's action fails. There is no actionable negligence

shown upon which the plaintiff can predicate liability.

\*     \*     \*     \*     \*     \*

> "Under all the facts and circumstances, the defendant was not guilty of any negligence and no liability exists for damages to the plaintiff.

> "The acts urged by the plaintiff and appellant as negligence on the part of the defendant, as a matter of law, do not constitute a cause of action against the defendant."

*Belt* at 121, 123.

In *Braatz*, the plaintiff, a pedestrian in Fargo, injured her foot when she stepped from a sidewalk into a drainage ditch after being frightened by a whistle on a bicycle which came up behind her. The plaintiff alleged Fargo was negligent in allowing the drainage ditch to exist without any guard or warning. This Court affirmed a judgment notwithstanding the verdict for Fargo, holding, as a matter of law, Fargo owed no duty to the plaintiff, because "no careful or prudent person would reasonably anticipate any danger to pedestrians using the walk." *Braatz* at 1045. This Court quoted with approval from other sources:

> " '[W]hen, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law.... They could undoubtedly have repaired it at very little expense, but the omission to do so does not show, or tend to show, that they were negligent, unless the defect was of such a character that a reasonably prudent man should anticipate some danger to travelers on the walk if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe within the rule, and when accidents occur the municipality must be treated practically as an insurer against accidents in its streets. The law does not prescribe a measure of

duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence. . . .'

" 'A municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day, and whether they are so or not is a practical question, to be determined in each case by its particular circumstances.' "

*Braatz* at 1043–44.

▆ Driving an automobile on any road or street presents some degree of inherent danger. Our decisions, however, do not require a municipality to be an insurer against accidents on its streets. Rather, the foregoing cases illustrate the resolution of a municipality's duty involves whether the condition of the street is unreasonably dangerous for a driver exercising ordinary care.

Here, in arguing this street was unreasonably dangerous, the plaintiffs rely upon their experts' opinions it was unsafe, the deposition testimony of the police officers who investigated this accident, evidence of a two-car collision at the crossing in 1986, and a 1978 North Dakota Highway Department report which said the grade of the street at the crossing was "[t]oo steep."

It is undisputed 9th Street East was a straight gravel road with a "hump back" railroad crossing on the crest of an eight-foot rise, and drivers of vehicles approaching the crossing could not see vehicles approaching

from the other direction. The plaintiffs do not dispute warning signs near the railroad crossing met the requirements and standards for a standard warning system at a public highway-railroad grade crossing under N.D.C.C. ch. 24–09,[2] including advance warning signs as required by N.D.C.C. § 24–09–04 ("The sole signing duty of the road authority . . . at public grade crossings in the state is the erection and maintenance of advance warning signs."). Also undisputed is that Burlington Northern installed its warning system at the crossing in 1979, which was after an October 27, 1978 report by the North Dakota Highway Department which indicated the "road profile is bad on both sides. Too steep." The obvious purpose of those railroad crossing warning signs is to alert drivers to proceed with caution.

The plaintiffs rely heavily on evidence of a two-car accident at the crossing on October 10, 1986. The plaintiffs, however, do not dispute a traffic count by West Fargo in 1989 indicated approximately 700 vehicles per day traveled on this street. A street authority cannot insure no accidents will occur on its streets, and a single accident juxtaposed against the number of drivers on this street does not reflect an unreasonably dangerous condition for a driver exercising ordinary care. *Compare Schaeffer v. Kansas Dep't of Transp.,* 227 Kan. 509, 608 P.2d 1309, 1317 (1980) (trial court did not err in admitting evidence of seven accidents at curve in road in seven previous years to show dangerous condition); *Smith v. State,* 12 Misc.2d 156, 177 N.Y.S.2d 102, 104 (1958) (twenty-five accidents at curve in road in six years established dangerous condition). Moreover, the plaintiffs do not dispute Burlington Northern widened the crossing to 32 feet at the crest and to 26 feet in the approach area after the 1986 accident and before the accident in this case. The plaintiffs also do not dispute the street was 22 feet wide for at least 200 feet on each side of the railroad crossing. Under these circumstances, we are not persuaded evidence of a single accident raises a factual

---

**2.** Section 24–09–01.1, N.D.C.C., says, "[t]he standard warning system at each public highway-railroad grade crossing must be railroad crossbucks and advance warning signs . . . [which] must be deemed adequate and appropriate for warning of the existence and nature of each railroad crossing for all purposes whatsoever."

issue about whether the street was unreasonably dangerous for a driver exercising ordinary care.

There was no posted speed limit near the railroad crossing; however, the speed limit in West Fargo for unposted streets is 25 miles per hour, and under N.D.C.C. § 39–09–02(1)(a), the speed limit at an obstructed railroad crossing is 20 miles per hour. *See also* N.D.C.C. § 39–09–01 ("every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing"). All persons are presumed to know the law. *Tooley v. Alm*, 515 N.W.2d 137, 141 (N.D.1994). The cost of posting speed limit or other warning signs near the crossing may have been relatively small. This street, however, was not a pitfall, trap or snare which constituted a dangerous condition for a prudent driver. *DeLair* at 63; *Belt* at 121. *Compare Trihub v. City of Minot*, 74 N.D. 582, 23 N.W.2d 753 (1946) (unprotected coal pit immediately beyond the end of a dead end street created dangerous pitfall to travelers). The street was posted with railroad crossing warning signs, and West Fargo's failure to post additional warning signs did not render the street unreasonably dangerous for a driver exercising ordinary care.

The condition of the street at the time of this accident leads to one conclusion about which reasonable persons could not disagree—it was not an unreasonably dangerous or hazardous condition for a driver exercising ordinary care. We hold, as a matter of law, West Fargo did not have a duty to change the grade of the street, or to post a speed limit or other warning sign near the crossing. We therefore affirm the summary judgment dismissal of the plaintiffs' negligence claims against West Fargo.

### C

Because of our resolution of the duty issue, we need not decide whether West Fargo is immune from liability under the discretionary immunity limitation in N.D.C.C. § 32–12.1–03(3). *See Belt* at 119 (because case could be decided on other grounds, this Court declined to decide whether "govern-mental function" theory provides immunity from liability for negligence).

### III

The Gehrkes apparently concede the district court did not err in dismissing their third-party complaint for contribution from Burlington Northern under *Target Stores v. Automated Maintenance Services, Inc.*, 492 N.W.2d 899 (N.D.1992). Instead, they argue the court erred in refusing to allow the pleadings to be amended to join Burlington Northern and American Family as defendants and to consolidate the claims into one action.

We review the district court's decision under the abuse of discretion standard. *See Reiling v. Bhattacharyya*, 270 N.W.2d 562, 564 (N.D.1978); *Danks v. Holland*, 246 N.W.2d 86, 90 (N.D.1976). A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner. *E.g., Lacher v. Anderson*, 526 N.W.2d 108, 112 (N.D.1994). We conclude the court did not act arbitrarily, unreasonably, or unconscionably, and, therefore, did not abuse its discretion in denying the Gehrkes' motion.

### IV

We affirm the summary judgment.

VANDE WALLE, C.J., NEUMANN and MESCHKE, JJ., and LEVINE, Surrogate Judge, concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.